Argued June 1, reversed and remanded July 23, 1971

# MYERS, *Appellant, v.* BRICKWEDEL, *Respondent.*

486 P2d 1286

*Ryan Lawrence,* Portland, argued the cause for appellant. With him on the briefs were Peterson, Chaivoe & Peterson and Susak & Lawrence, Portland.

*Sydney L. Chandler,* Coos Bay, argued the cause for respondent. With him on the brief were Walsh, Chandler & Walberg, Coos Bay.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This is an appeal from an order dismissing a case after the granting of a motion to quash service of the summons and complaint. That service had been made on defendant in California under ORS 14.035, the Oregon "long-arm" statute.

The complaint was filed by plaintiff, also a resident of California, and alleged that he was the husband of Wilma Rita Myers; that defendant had enticed her to abandon him and his home; that "while in Portland, Multnomah County, State of Oregon, defendant did wilfully and maliciously debauch and carnally knew the said Wilma Rita Myers," causing her to abandon plaintiff and depriving him of the conjugal relationship with his wife, all to his damages in the sum of $50,000 general damages and $150,000 punitive damages. It appears, however, that actions for damages for alienation of affections and criminal conversation, although still permitted in Oregon, have been abolished in California. Section 43.5 California Civil Code.

Plaintiff contends on this appeal: (1) that the only question properly before this court is whether an Oregon court may properly take personal jurisdiction based upon service under ORS 14.035 over a nonresident defendant who has voluntarily come into the state and has committed a single tortious act, and (2) that all questions of conflicts of law to be applied in deciding the results of the case are now "premature," subject to being considered and decided later, and only after the Oregon court has taken jurisdiction over the defendant in such a case.

In response, defendant contends, in effect: (1) that the "single tortious act" described in this com-

plaint does not satisfy the "criteria" established by this court in *State ex rel White Lbr. v. Sulmonetti*, 252 Or 121, 448 P2d 571 (1968), both (a) because plaintiff is not a resident of Oregon, giving it a "special reason" to protect the interests of a resident from injury by a nonresident, and (b) because the complaint does not allege that the tort of alienation of affections took place in Oregon; (2) that the exercise of jurisdiction in such cases should be "handled, if necessary, by judicious use of forum non conveniens" with the result that where, as in this case, the "most significant relationship" and "contacts" are in California, it would follow that Oregon has no "interest in the application of the forum State's law," and (3) that "it would be futile to assert jurisdiction without choosing the applicable state law," since if the law of California is applicable plaintiff cannot recover in this case.

1. This court has previously held that in cases in which the jurisdiction of the court rests upon service of process upon a defendant in another state under ORS 14.035, the Oregon "long-arm" statute, two questions are presented: (1) Does the case fall within the terms of ORS 14.035? If so, (2) Does due process permit an Oregon court, as a matter of constitutional law, to obtain and exercise personal jurisdiction over the defendant in such a case? *State ex rel Western Seed v. Campbell*, 250 Or 262, 270-72, 442 P2d 215 (1968). See also Levin, The "Long-Arm" Statute and Products Liability, 4 Will L J 331, 337 (1967).

2. The first question is not difficult in this case. ORS 14.035 (1)(b) authorizes service upon an out-of-state defendant "as to any cause of action or suit or proceeding arising from * * * the commission of a tortious act within this state * * *." We held in

*Western Seed* (at p 271) that this statute, as also true of the Illinois statute upon which it was modeled, should be interpreted "as broadly as constitutional due process will permit."

3. This complaint may be somewhat ambiguous whether it alleges that the tort of alienation of affections was committed within this state, since the act alleged to have taken place in Oregon may not have resulted in an alienation of the affections of plaintiff's wife in Oregon. The alienation of her affections may have occurred at some other and subsequent time and place. However, the complaint also alleges a cause of action for the tort of criminal conversation (adultery) with plaintiff's wife and that this tortious act was committed in Portland, Oregon. It follows that the allegations of this complaint are sufficient to bring this case within the terms of ORS 14.035 (1)(b). Defendant's remaining contentions go to the further question of due process.

4. Defendant's contention that a "single tortious act" within a state cannot provide a constitutional basis for the exercise of personal jurisdiction where the plaintiff is not a resident of the state, so as to give it no "special reason" to protect the interests of its own residents from injury by nonresidents, must also be rejected.

It is true that this may have been the original and primary basis relied upon by the courts to support the constitutional application of "long-arm" statutes in "single tort" cases. Among other such authorities see *McGee v. International Life Ins. Co.,* 355 US 220, 223, 78 S Ct 199, 2 L ed 2d 223 (1957); *Nelson v. Miller,* 11 Ill 2d 378, 143 NE2d 673 (1957); *Lewin v. Bock Laundry Machine Co.,* 249 NYS2d 49, 42 Misc 2d 599

(1964); and *Feathers v. McLucas,* 21 AD2d 558, 251 NYS2d 548 (1964). See also Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U Ill L Forum 533, 540-43, and *International Shoe Co. v. Washington,* 326 US 310, 318, 66 S Ct 154, 90 L ed 95 (1945).

It is now recognized, however, that such statutes may have constitutional application in "single tort" cases even when both parties are nonresidents. *Dart Transit Co. v. Wiggins,* 1 Ill App 2d 126, 117 NE2d 314, 319, 320 (1954), and cases cited therein; *Elkhart Engineering Corporation v. Dornier-Werke,* 343 F2d 861, 868 (5th Cir 1965); *Callahan v. Keystone Fireworks Manufacturing Co.,* 72 Wash2d 823, 435 P2d 626, 635-38 (1967), and *Amercoat Corp. v. Reagent Chemical & Research, Inc.,* 108 NJ Super 331, 261 A2d 380 (1970). Cf. *Williams v. Connolly,* 227 F Supp 539 (D Minn 1964); *Curtis Publishing Company v. Birdsong,* 360 F2d 344 (5th Cir 1966), and *Seymour v. Parke, Davis & Company,* 294 F Supp 1257 (DNH 1969). See also Currie, *supra* (at 541-44).

The particular question presented by this case is whether a "long-arm" statute can have constitutional application in a "single tort" case between two non-residents who would have no cause of action under the law of the state of their residence for the act complained of, but for which a remedy is provided under the law of the state where the act was performed.

This requires consideration of the constitutional basis underlying the exercise of jurisdiction under "long-arm" statutes. In *State ex rel Western Seed v. Campbell, supra* (at 272-75), we considered that subject, including decisions by the Supreme Court of the

United States which provided the legal impetus for such statutes.①

In *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), this court referred again (at p 124) to the test as originally stated in *International Shoe* to the effect that "the due-process question is whether the alleged facts are such that the forum may exercise jurisdiction without offending traditional notions of fair play and substantial justice." After recognizing (at p 125) "the difficulty in applying subjective standards like fair play and substantial justice" and after further discussion, we stated the following test for application in such cases:

> "From the *McGee* and *Hanson* cases, three criteria can be said to define the present outer limits of *in personam* jurisdiction based on a single act: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco,* 401 F2d 374 (6th Cir 1968)."

Although the indefiniteness of such criteria was criticized in the dissenting opinion by Mr. Justice (now Chief Justice) O'CONNELL in that case, it was nevertheless approved by the majority of this court as the best statement of "criteria" then available for appli-

---

① International Shoe Co. v. Washington, *supra*; McGee v. International Life Ins. Co., *supra*, and Hanson v. Denckla, 357 US 235, 78 S Ct 1228, 2 L ed 2d 1283 (1958).

cation in such cases in an attempt to make more definite the original test of "fairness."[2]

This case clearly satisfies the first two of the *White* "criteria," since it appears from the facts, as alleged, that defendant "purposely availed himself of the privilege of acting" in Oregon and that a cause of action arises from the consequences of such activities, at least in Oregon, as the forum state. The more difficult question is whether such activities and consequences have a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable"—the third "criterion," and another subjective test.

The principal contention by defendant—that the "exercise" of jurisdiction in such cases should be "handled * * * by judicious use of forum non conveniens"—would, in effect, equate the concept of jurisdiction with that of "forum non conveniens." Thus, under that contention, if the defendant's residence is the more convenient forum, this court would not *exercise* jurisdiction.

Much the same contention was proposed by the

---

[2] In its previous decision in *Western Seed* (at 273), this court also, after quoting from Hanson v. Denckla, *supra* note 1, stated that:

> "*Hanson v. Denckla* thus adds to the fairness test of *International Shoe* an objective element: a purposeful act by the defendant. The requirement of a purposeful act by the defendant prevents the seizing by a forum of bootstrap jurisdiction based upon the unilateral act of the plaintiff."

See also discussion by Scoles, Oregon Conflicts: Three Cases, 49 Or L Rev 273, 276-77 (1970); Siedelson, Jurisdiction over Non Resident Defendants: Beyond "Minimum Contacts" and Long-Arm Statutes, 6 Duq U L Rev 221, 229 (1967-68); Developments in the Law, State-Court Jurisdiction, 73 Harv L Rev 909, 948 (1960), and Currie, *supra,* at 540-43.

dissenting opinion in *White* (at 134-39).[8]  Indeed, as noted by Scoles, *supra* note 2 (at 280) :

> "The dissent seems to infer that the domicile of the defendant should be substantially the *only* jurisdictionally appropriate forum. But the references upon which reliance is placed generally accept the defendant's domicile as *one* of several available forums. * * *."

That proposal was rejected by the majority of this court in *White.* The result of *White,* however, is in accord with *Hanson v. Denckla,* 357 US 235, 78 S Ct 1228, 2 L ed 2d 1283 (1958), in which the court said (at p 254) :

> "It [the forum state] does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. *The issue is personal jurisdiction, not choice of law.*"[9]  (Emphasis added)

To the same effect, in denying a stay of judgment pending appeal in *Rosenblatt v. American Cyanamid Company,* 86 S Ct 1, 15 L ed 2d 39 (1965), Justice Goldberg, in a memorandum opinion, after referring to the fact that neither party was a resident of New York, in which the action was filed, and that "the center of gravity" of the case was also elsewhere, said :

> "These facts are not relevant, however, to the *jurisdiction* of New York, which is plainly supportable, as far as due process is concerned, on appellant's conduct within New York. They relate only to questions of convenience and not to jurisdiction in a constitutional sense."

[8] See also Ehrenzweig, From State Jurisdiction to Interstate Venue, 50 Or L Rev 103 (1971).

[9] To the same effect, see Note and Comment, 44 Or L Rev 131, at 138, also criticizing use of "forum conveniens" as a limitation on the exercise of personal jurisdiction in such cases.

We thus return to the question whether, aside from considerations of "forum non conveniens," the facts as alleged by this complaint, including defendant's alleged tortious act of criminal conversation with plaintiff's wife in Oregon, together with the consequences of that act, provide a "substantial enough connection" with the state of Oregon "to make the exercise of jurisdiction over defendant reasonable."

In *Albert v. McGrath,* 278 F2d 16 (DC Cir 1960), although not involving application of a "long-arm" statute, the question was presented whether the courts of the District of Columbia could properly provide a remedy in an action for damages for alienation of affections where the acts and conduct giving rise to the claim occurred there, but both husband and wife resided in Maryland, which by statute had abolished such a remedy. In reinstating a verdict and judgment in favor of plaintiff, the court held (at p 18) that the "consortium between husband and wife" is not confined to the state of their residence, but is also entitled to protection elsewhere. The court also held (at p 18):

"* * * Our courts thus administer the public policy of the District of Columbia, in the larger sense because our society depends for its basic strength upon the maintenance of the family. Aid of the injured spouse is an incident of that policy.

"* * * Protection of the common consortium and a remedy for its intentional destruction are proper concerns of our law."

As also held, to the same effect, in *Gordon v. Parker,* 83 F Supp 40, 42 (D Mass 1949):

"* * * She [Massachusetts] is concerned with conduct [adultery] within her borders which in her view lowers the standards of the community where they occur. * * *."

See also *Orr v. Sasseman,* 239 F2d 182 (5th Cir 1956), and 73 Harv L Rev, *supra* note 2, at 969.

It is true that in so holding these courts were considering a question of conflict of laws, rather than one of jurisdiction under a "long-arm" statute. It may also be true that this court would not agree with these decisions, as a question of conflict of laws. We also agree, as stated in *Hanson v. Denckla, supra,* at 251, that the trend to increase jurisdiction over nonresidents does not necessarily herald "the eventual demise of all restrictions on the personal jurisdictions of the state courts" and that in order to sustain personal jurisdiction over a nonresident based upon service under a "long-arm" statute a state must have some "interest" in the application of its law to the case.[9]

5. For the same reasons as stated in *Albert* and *Gordon,* however, we hold that conduct by a nonresident consisting of the tort of criminal conversation with a married woman, when performed in this state, so violates the public policy of Oregon that, as a result, such conduct and its consequences satisfy the test previously adopted by this court in *White* by providing a "substantial enough connection" with the state of Oregon "to make exercise of jurisdiction over [such a] defendant reasonable."[10] It also follows, in our view, that the state of Oregon has sufficient "interest" in the application of its laws to the conduct of the defendant and the consequences of that conduct, so as to

---

[9] See Currie, *supra,* at 540–55.

[10] When the new criminal code becomes effective in Oregon on January 1, 1972, the previous statutes making adultery a crime will be repealed. See Oregon Laws 1971, ch 743, § 432; (repealing ORS 167.005) and §§ 104–120. Defendant in this case does not deny, however, that "criminal conversation" by act of sexual intercourse with a married woman is still a tort in Oregon. See Disch v. Clossett, 118 Or 111, 244 P 71 (1926).

satisfy the test of *Hanson* and *McGee,* and that there have been sufficient "contacts" by defendant within this state, so as to satisfy the original test of *International Shoe.*

At the time of oral argument on this case counsel for defendant frankly stated that defendant was asking that the question of conflict of laws be decided in this case at this time, even though the basis of the dismissal of the case, following defendant's motion to quash the service, was made "on the grounds that the provisions of ORS 14.035 did not apply to this case." We do not, however, consider that question to be properly before the court on appeal from such an order of dismissal, and one based upon such a motion.

6. The question of conflict of laws, as applied to the facts of this case, is a question to be decided in the first instance by the trial court, after considering whether the law of California should be applied in determining the substantive rights of the parties, rather than the law of Oregon.[7] But the question of the *jurisdiction* of the courts of Oregon to consider and decide such a case, based upon service made under the "long-arm" statute of this state is a different question and it is the sole question now before this court.[8]

---

[7] See Scoles, *supra,* at 280-86, and Foley, Fragmentation in the Conflict of Laws, 47 Or L Rev 377 (1968), and Oregon cases cited therein, including Casey v. Manson Construction Co., 247 Or 274, 428 P2d 898 (1967), among others. See also Babcock v. Jackson, 12 NY2d 473, 191 NE2d 279 (1963), and Purcell v. Kapelski, 444 F2d 380 (3d Cir 1971); 39 US Law Week 2706.

[8] It should also be noted that while the state of Oregon has a sufficient "interest" in the application of its laws to conduct by a nonresident consisting of the tort of "criminal conversation" with a married woman so as to satisfy the tests of "jurisdiction," as stated in *Hanson* and *McGee,* such an "interest" is only one of the various factors to be considered in deciding the question of conflict of laws, as applied to the facts of this case.

For all of these reasons we hold that the service upon defendant, as a nonresident, was within the term of ORS 14.035; that no constitutional rights of the defendant are violated by requiring him to appear and contest this charge in the courts of Oregon, and that the trial court has jurisdiction to consider and decide this case.

It follows that the order dismissing the case must be reversed and it is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.