Argued March 1, reversed April 19, 1972

KISLE, *Respondent, v.* ST. PAUL FIRE AND
MARINE INSURANCE COMPANY, *Appellant.*

495 P2d 1198

*George A. Rhoten,* Salem, argued the cause for appellant. With him on the briefs were Rhoten, Rhoten & Speerstra, Salem, and Yokom & Mosgrove and Thomas M. Mosgrove, John Day.

*Milo W. Pope,* Milton-Freewater, argued the cause for respondent. With him on the brief were Galbreath

and Pope, Milton-Freewater, and John N. Hutchens and Schroeder, Denning & Hutchens, Vale.

DENECKE, J.

This action involves the coverage of a liability insurance policy.

The plaintiff, Kisle, is a rancher in one of the more arid parts of eastern Oregon. He incurred damage to his sprinkler system and Harney County Farm Supply Co. agreed to procure parts and repair the damage. According to plaintiff, Harney Supply agreed to do this on March eighteenth and delivery was to be made as soon as it could obtain the pipe. According to Harney Supply, about April first, it undertook to secure the parts and make the repairs and gave no delivery date. The Harney Supply employee who was directed to get the parts became ill and he did not order the parts. Harney Supply's manager gave no reason why he or some other employee did not order the pipe. Plaintiff's foreman testified that Harney Supply's manager told him about March twenty-eighth that he would go to the hospital to see the employee and get everything "straightened out."

According to Harney Supply, its supplier received the order on May ninth, but because some of the parts were not in the supplier's stock and because of some unexplained delay by the supplier, the parts did not arrive until about June seventh. Plaintiff's foreman testified that the Harney Supply manager responded to his inquiry as to when the repairs could be made by stating, "that he couldn't get to it," and when the foreman said they would sue, the manager replied, "Fine. You can't get blood out of a turnip."

The trial court made no finding on the cause of the delay.

The parts arrived about June seventh and the repairs were completed June ninth. As a consequence of Harney Supply's failure to perform its contract until June ninth, plaintiff was unable to irrigate until that time and his alfalfa crop was damaged.

Plaintiff brought an action against Harney Supply to recover the amount of his alfalfa damage. The complaint was entitled, "Action for Breach of Contract," and alleged that Harney Supply breached its contract by not making repairs within the time agreed.

The defendant, St. Paul Fire and Marine Insurance Company, had issued a comprehensive general liability policy to Harney Supply. Harney Supply tendered the defense of Kisle's action against it. St. Paul rejected the tender, stating that the action was for breach of contract and it did not cover Harney Supply's liability for such causes.

Harney Supply settled Kisle's lawsuit and assigned its claim against St. Paul to Kisle. This is an action upon that assigned claim.

The policy provides:

"The Company will pay on behalf of the Insured [Harney Supply] all sums which the Insured shall become legally obligated to pay as damages because of * * * property damage to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of * * * property damage * * *."

The policy defines "occurrence":

> " '[O]ccurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

Paraphrasing the coverage of the policy, St. Paul agrees to pay all sums for which Harney Supply "shall become legally obligated" to pay because of property damage caused "by accident." St. Paul does not contend Harney Supply was not "legally obligated" nor that Kisle did not incur property damage. The only remaining question about the coverage of this part of the policy is, was the damage caused by "an accident." We hold it was not.

We have had difficulties interpreting "accident" in insurance policies. For the most recent example, see *Pope v. Benefit Trust Life Ins. Co.*, 261 Or 397, 494 P2d 420 (1972). We do not want to further complicate the matter and intermingle cases involving liability policies with health and accident policy cases. We agree with the Casualty Committee of the International Association of Insurance Counsel:

> "While the courts quite often use the decided cases in the accident field for authority in the public liability field, it is submitted that a difference in the purpose of the liability policy should bar such an indiscriminate use of the accident cases. In a general liability policy when the assured takes out a policy to protect himself from injuries caused by accident, he is endeavoring to protect himself against claims made against him by third parties * * *." *Caused by Accident*, 23 Ins Counsel J, 33, 37 (Jan 1956).

We have held that damage incurred because the

insured negligently performed its contract and furnished a defective product is damage caused by accident. *Ramco, Inc. v. Pacific Ins.*, 249 Or 666, 439 P2d 1002 (1968). This is in accord with the majority of decisions. See cases collected at Annot, 7 ALR3d 1262 (1966).

Other courts have held that damage caused by the negligent performance of a contract obligating the insured to perform services can be damage caused by accident. For example, *Viking Automatic Sprinkler Co. v. Pacific Indemnity Co.*, 19 Wash 2d 294, 142 P2d 394 (1943). There, the insured contracted to install a sprinkler system. During installation an employee of the insured shut off the system and as a result property was damaged by fire. Accord, *General Cas. Co. of Wisconsin v. Larson*, 196 F2d 170 (8th Cir 1952).

■ No decisions have been cited or found that have held that damage caused by a failure to timely perform a contract is damage caused by "accident." We find there is a significant distinction between negligent performance of a contract and a complete failure of timely performance. We hold that damage caused by the latter is not caused by accident.

■ We do not need to definitively define "accident"; however, we do hold that "accident" has a tortious connotation. Damage solely caused by failure to perform a contract is not recoverable in tort. A tort is a breach of a duty created by law and not necessarily by the agreement of the parties. *Harper v. Interstate Brewery Co.*, 168 Or 26, 36, 120 P2d 757 (1942). Prosser, Law of Torts (4th ed), 613. Damage caused by the negligent performance of a contract can in certain instances be recoverable in tort. *Dowell v. Moss-*

*berg,* 226 Or 173, 179, 355 P2d 624, 359 P2d 541 (1961).[①] This is because by contract the parties have entered into a relationship in which the law requires, apart from any obligation assumed by contract, that the obligor act with due care. For example, if a physician contracts to treat a patient and treats the patient negligently, he is liable in tort because the law, apart from contract, imposes a duty upon the physician to treat patients with due care. Prosser, Law of Torts, supra at 613.

Damages caused by a failure to perform "amount to mere breaches of contract, for which no tort action will lie." Prosser, Law of Torts, supra at 615. Accord, 2 Harper and James, Law of Torts, 1050-1051 (1956).

■ We hold that damages caused by the failure of an insured to timely perform a contract are not damages caused by "accident."

Reversed.

---

[①] Damages may also on occasion be recoverable in contract. Harper v. Interstate Brewery Co., 168 Or 26, 36, 120 P2d 757 (1942).