Argued November 18, 1976, reversed January 17, 1977

# STATE ex rel McKENNA, *Respondent,*
## *v.*
# BENNETT, *Appellant.*
## (No. 19,558, CA 6077)

558 P2d 1281

Robert Norman Ehmann, Sixth Judicial District Legal Aid Society, Pendleton, argued the cause for appellant. With him on the briefs was Norval E. Baran, Director, Sixth Judicial District Legal Aid Society, Pendleton.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

TANZER, J.

FORT, S. J., dissenting

## TANZER, J.

Respondent mother, a resident of Oregon, filed a filiation petition to establish paternity of her daughter against appellant. The petition alleged that the act or acts of intercourse occurred in Oregon, that the child resided in Oregon, and that the appellant had contributed nothing to the support of the child. Appellant was alleged at the time of filing of the petition to be a resident of Walla Walla County, Washington. He was personally served there with notice to appear at a time certain but made no appearance. The court thereafter entered a default against him, conducted a hearing, took sworn testimony, and found by a preponderance of evidence that appellant was the father. It then entered a support order against him in the sum of $75 per month. Several months later appellant, appearing specially, filed a motion, supported by his attorney's affidavit, to set aside the default, in which he acknowledged timely service of the original notice to appear and show cause, on the ground that the court lacked jurisdiction to enter the order of paternity and judgment of support. The court concluded that it had jurisdiction to enter the challenged order and judgment. The father appeals, asserting as his sole ground that the act or acts alleged did not constitute "commission of a tortious act within this state" within the meaning of ORS 14.035(1)(b).

ORS 14.035, commonly referred to as the "long-arm" statute, provides:

"(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

[ 157 ]

"(c) The ownership, use or possession of any real estate situated in this state;

"(d) Contracting to insure any person, property or risk located within this state at the time of contracting.

"* * * * *

"(3) Service of summons on any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the summons and copy of the complaint upon the defendant outside this state, in the manner provided in ORS 15.110. Such service shall have the same force and effect as though summons had been personally served within this state.

"(4) Only causes of action or suit or proceedings arising from acts enumerated in this section may be asserted against a defendant in an action or suit or proceeding in which jurisdiction over such defendant is based upon this section.

"(5) Nothing contained in this section limits or affects the right to serve any person in any other manner now or hereafter provided by law."

First, we conclude that the Due Process Clause would not bar a state from exercising personal jurisdiction over a nonresident of Oregon who performs an act with foreseeable, actionable consequences in Oregon. *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1968), *cert den* 393 US 1093 (1969); *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968). The birth of the child in Oregon for whom the parent would have a legal obligation of support is a foreseeable consequence of an act of sexual intercourse in Oregon. Therefore, there is sufficient connection with Oregon for the legislature to constitutionally provide for long-arm jurisdiction in such a situation. *Backora v. Balkin,* 14 Ariz App 569, 485 P2d 292, *rev den* (1971).

The next issue is whether the legislature has done so. ORS 14.035(4) restricts long-arm jurisdiction to the specific causes "enumerated" in the section. If this conduct is enumerated, then it must be under the "tortious act" clause, ORS 14.035(1)(b). Therefore, the

question which the Supreme Court expressly left open in *State ex rel Poole v. Dorroh,* 271 Or 410, 532 P2d 794 (1975), is squarely presented in this case: When a voluntary act of sexual intercourse between two unmarried persons, committed within this state, results in the birth and residency of a child within this state, and the putative father has failed to support that child, has the putative father committed a tortious act within this state under ORS 14.035?

The definition of "tort" or "tortious act" is elusive, but has been summarized in this legal context as

"* * * any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages. * * *" *Poindexter v. Willis,* 87 Ill App 2d 213, 217-218, 231 NE2d 1, 3 (1967).

*See also Kisle v. St. Paul Fire & Marine Ins.,* 262 Or 1, 6, 495 P2d 1198 (1972); 1 Restatement (Second) of Torts, § 6 (1965); Prosser, Torts 1, 2, § 1 (3d ed 1964).

■ The conceptual act of intercourse, without some additional fact such as force, is not itself a tort. It is significant only as due process may require foreseeability of consequences. Similarly, whether the child lives in Oregon is relevant to jurisdiction, but not the existence or not of a tort.

That leaves only the failure of the respondent father to support his child as the purported tortious act which would bring filiation proceedings under the purview of the long-arm statute.

Some courts have held that the failure of a nonresident putative father of an illegitimate child born to a resident mother as a result of conception occurring within the forum state is a tortious act which brings a filiation proceeding under the long-arm statute. The reasoning, however, is either *ipse dixit, State ex rel. Nelson v. Nelson,* 298 Minn 438, 216 NW2d 140 (1974), and *Gentry v. Davis,* 512 SW2d 4 (Tenn 1974), or fallacious, *Poindexter v. Willis,* supra. The Supreme Court of Colorado correctly identified the fallacy in

the *Poindexter* case which the respondent urges upon us. In *A.R.B. v. G.L.P.,* 180 Colo 439, 442, 507 P2d 468, 469 (1973), the court reasoned:

> "* * * [Poindexter v. Willis] seems to go off on the premise that *failure to support* was a wrong which the legislature intended to include within the meaning of 'tortious act.' But failure to support is actually only an ancillary issue in a paternity case, where the main question for determination is: Is the respondent the father of the child? * * *." (original emphasis.)

The decisional issue of this case, then, is whether a filiation proceeding, under Oregon law, arises from a tortious act. We hold that it does not.

Failure to support the child, whether or not it is a tort, is not a necessary allegation in a filiation proceeding. ORS 109.125. Conversely, it is no defense to a filiation petition for the father to respond that he is providing the entire support for the child. The issue of a filiation proceeding is not whether a parent has failed to provide support, but whether the person is in fact the parent. Legal consequences and obligations flow from the establishment of that relationship, such as, for example, inheritance rights, social security benefits and the right to future support, but the existence of the commission of a tortious act in Oregon is not an element of the cause of suit in a filiation proceeding.

Similarly, liability for damages in tort flowing from the parent-child relationship is not in issue in a filiation proceeding. Possibly a suit for damages for tortious failure to pay back support could be based upon jurisdiction acquired under ORS 14.035. An order to pay future support, however, is based upon a relationship which is admitted or judicially determined, regardless of whether past support has been tortiously withheld.

The legislative concern that Oregon citizens have full benefit of long-arm jurisdiction to remedy wrongs done to them is well documented in the dissenting

opinion. The restrictive language of subsection (4), however, reflects a balancing concern that out-of-state residents not be subjected to the expense and difficulty of defending against faraway lawsuits except in specifically enumerated situations. Had the legislature intended to include jurisdiction over filiation proceedings, we may infer it would have done so in the same manner as it included other domestic relations suits in subsection (2).[1] Instead, that subsection refers specifically to domestic relations suits arising from ORS chapter 106 (marriage) and chapter 107 (dissolution, annulment and separation) and omits mention of chapter 109 (parent and child). Chapter 110 (Uniform Reciprocal Enforcement of Support Act) has been enacted to provide a remedy in situations like this. Particularly in light of the restrictive language of subsection (2) which tells us in effect "this much and no more," we decline to expand the definition of "tortious act" to include filiation proceedings.

Therefore the order denying respondent's motion to vacate the filiation decree was error and must be reversed.

Reversed.

**FORT, S. J.,** dissenting.

The first question presented here is: When a voluntary act or acts of sexual intercourse between two

---

[1] ORS 14.035(2) provides:

"(a) If the parties to a marriage have concurrently maintained the same or separate residences or domiciles within this state continuously for a period of six months, each party submits himself or herself to the jurisdiction of the courts of this state as to all personal obligations arising from a domestic relations suit instituted under ORS chapter 106 or 107, notwithstanding departure from this state and acquisition of a residence or domicile in another state or country before the filing of such suit.

"(b) If a domestic relations suit instituted under ORS chapter 106 or 107 is not commenced within one year following the date upon which the party who left the state has acquired a residence of domicile in another state or country, paragraph (a) of this subsection shall not confer upon the courts of this state personal jurisdiction over the party that has left the state."

unmarried consenting adults, committed within this state, results in the birth and residency of a child within this state, and the putative father has failed to support that child, has the putative father committed a tortious act or acts within this state under ORS 14.035? As the majority points out, this question was expressly left open in Oregon in the recent case of *State ex rel Poole v. Dorroh,* 271 Or 410, 532 P2d 794 (1975).

If the answer to that question is in the affirmative, as I believe it should be, the resolution of this controversy requires consideration of whether under the rule announced in *Myers v. Brickwedel,* 259 Or 457, 486 P2d 1286 (1971), the acts alleged provided " 'a substantial enough connection' with the state of Oregon 'to make exercise of jurisdiction over [a nonresident defendant] reasonable.' " 259 Or at 467.

1 Restatement (Second) of Torts § 6 (1965) defines tortious conduct as follows:

> "The word 'tortious' is used throughout the Restatement of this Subject to denote the fact that conduct whether of act or omission is of such a character as to subject the actor to liability under the principles of the law of Torts.
>
> "Comment:
>
> "*a.* The word 'tortious' is appropriate to describe not only an act which is intended to cause an invasion of an interest legally protected against intentional invasion, or conduct which is negligent as creating an unreasonable risk of invasion of such an interest, *but also conduct which is carried on at the risk that the actor shall be subject to liability for harm caused thereby, although no such harm is intended* and the harm cannot be prevented by any precautions or care which is practicable to require." (Emphasis supplied).

Prosser, Torts 1, 2, § 1 (3d ed 1964), points out:

> "A really satisfactory definition of a tort has yet to be found. The numerous attempts which have been made to define the term have succeeded only in achieving language so broad that it includes other matters than torts,

or else so narrow that it leaves out some torts themselves.* * *" (Footnotes omitted.)

He then proceeds to demonstrate by reference to many authorities and examples, including those arising from both contractual[1] and quasi-contractual relations cognizable as torts, the bases for his statement, and summarizes in part as follows:

"* * * [I]t has been said that torts consist of the breach of duties fixed and imposed upon the parties by the law itself, without regard to their consent to assume them, or their efforts to evade them. * * *

"* * * * *

"* * * Liability in tort is based upon the relations of men with one another; and those relations may arise generally, with large groups or classes of persons, or singly, with an individual.

"* * * * *

"The law of torts, then, is concerned with the allocation of losses arising out of human activities; and since these cover a wide scope, so does this branch of the law. * * *

"In so broad a field, where so many different types of individual interests are involved, and they may be invaded by so many kinds of conduct, it is not easy to find any single guiding principle which determines when such compensation is to be paid. So far as there is one, it would seem that *liability must be based upon conduct which is socially unreasonable.* The common thread woven into all torts is the idea of unreasonable interference with the interests of others. In many cases, of course, what is socially unreasonable will depend upon what is unreasonable from the point of view of the individual. * * *

"But socially unreasonable conduct is broader than this, and the law looks beyond the defendant's own state of mind and the appearance which his own conduct presented, or should have presented to him. It must

---

[1] *See: Kisle v. St. Paul Fire & Marine Ins.,* 262 Or 1, 6-7, 495 P2d 1198 (1972); *Harper v. Interstate Brewery Co.,* 168 Or 26, 36-37, 120 P2d 757 (1942). *See also: A.R.B. v. G.L.P.,* 180 Colo 439, 507 P2d 468 (1973), where in a case involving an identical issue to the case at bar, the problems posed by Prosser are discussed in the dissent.

[ 163 ]

measure his acts, and the harm he has done, by an objective, disinterested and social standard. It may consider that his behavior, although entirely reasonable in itself from the point of view of any man in his position, has created a risk or has resulted in harm to his neighbors which is so far unreasonable that he should nevertheless pay for what he breaks. Sometimes it must range rather far afield, and look primarily to the social consequences which will follow. * * *" Prosser, Torts, supra at 4-6. (Emphasis supplied.)

In *Kisle v. St. Paul Fire & Marine Ins.,* 262 Or 1, 6, 495 P2d 1198 (1972), the court said:

"* * * A tort is a breach of a duty created by law and not necessarily by the agreement of the parties. *Harper v. Interstate Brewery Co.,* 168 Or 26, 36, 120 P2d 757 (1942). Prosser, Law of Torts (4th ed), 613. * * *"

In *Hackett Digger Co. v. Carlson,* 127 Or 386, 390, 272 P 260 (1928), the court defined a tort as " 'a private or civil wrong or injury. A wrong independent of contract.' "

In *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1967), *cert denied* 393 US 1093 (1969), the court dealt at length with the Oregon long arm statute, pointing out that "the Oregon statute was copied from the Illinois statute," and concluded:

"The Illinois statute was intended to exploit the outer limits of due process in aid of Illinois litigants. See Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U Ill L F 533. It is reasonable, therefore, to hold that a statute modeled after the Illinois statute should be interpreted in Oregon as broadly as constitutional due process will permit." 250 Or at 271.

As is pointed out in *Poole,* a substantial majority of the cases which have considered the question presented here have concluded that on facts identical to the case at bar the long arm statute does apply and that failure of the nonresident father to support his illegitimate child sired in the forum state does constitute tortious conduct within that Act. Among the

states so holding is Illinois, *Poindexter v. Willis,* 87 Ill App 2d 213, 231 NE2d 1 (1967), where the court said:

> "In accordance with the views expressed by our Supreme Court, we interpret Sections 16 and 17 of the Illinois Civil Practice Act to reflect a conscious purpose by the Legislature to assert jurisdiction over nonresidents to the extent permitted by the due process clause and therefore hold that the word 'tortious' as used in Section 17(1)(b) of said Act is not restricted to the technical definition of a tort, but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages. Therefore, in our opinion, the failure of the father to support an illegitimate child constitutes a tortious act within the meaning of the statute and subjects him to the jurisdiction of the Illinois courts under Chapter 110, Secs. 16 and 17 of the Illinois Civil Practice Act." 231 NW2d at 3.

Among the most recent cases are *State ex rel Nelson v. Nelson,* 298 Minn 438, 216 NW2d 140 (1974), and *Gentry v. Davis,* 512 SW2d 4 (Tenn 1974). In *Nelson* the Supreme Court of Minnesota discussed this problem and said:

> "The issue for decision is whether a nonresident putative father of an illegitimate child born to a resident mother, the act of conception having allegedly occurred in this state, may be subjected to the jurisdiction of a court in this state upon a complaint of fathering and failing to support the child. The more precise issue is whether this paternity complaint alleges a 'tort' within the meaning of our long-arm statute, Minn. St. 543.19, for defendant does not otherwise assert that such application of the statute would be a denial of due process. We hold that the long-arm statute does apply and accordingly affirm the order of the district court denying defendant's motion to quash the return of service and to dismiss the action for lack of personal jurisdiction." 298 Minn at 439-40, 216 NW2d at 141-42.

*Gentry v. Davis, supra,* holds to the same effect.

*A.R.B. v. G.L.P.,* 180 Colo 439, 507 P2d 468 (1973), though holding contra by a divided court to the above authorities, is the only appellate court to have done so.

In that case the court sought to distinguish *Poindexter v. Willis, supra,* on the ground it turned on the question of failure to support, and declined to extend the Colorado long arm statute to a similar fact situation. Not even the Colorado court placed its decision upon due process grounds. None of the authorities I have found hold that due process is violated by application of the long arm statute to a fact situation similar to the case at bar.

Our Supreme Court in *Western Seed v. Campbell, supra,* holds that the long arm statute "should be interpreted as broadly in Oregon as constitutional due process will permit." 250 Or at 271.

I agree with *Prosser, supra,* that the law looks beyond the state of mind of the defendant in such a case as this and measures his acts and the harm he has done by an objective, disinterested standard. It is a basic law of nature that a completed act of sexual intercourse may result in pregnancy, and when, as the court found here, that occurs, it is a clearly foreseeable consequence of the act, and creates a multitude of social consequences of which the father's duty to support is but one.

I conclude, based upon the foregoing, that the failure of the respondent father to support his child, conceived and living within this state, constitutes a tortious act within ORS 14.035(1)(b), and that therefore the putative father has submitted himself to the jurisdiction of the courts of Oregon as to a proceeding by the mother to establish paternity and enforce his duty to support their child.

I turn now to the second question mentioned above, namely, does the act of intercouse within the state of Oregon with its resulting pregnancy, birth and residency of the child in Oregon, and defendant's failure to support establish "a substantial enough connection" with the state of Oregon to warrant application of the long arm statute? The general problem is discussed at length by our Supreme Court in *State ex rel White v.*

*Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), and in *Myers v. Brickwedel, supra.*

In the latter case the Supreme Court held that an act of voluntary sexual intercourse in Oregon by a wife established a "substantial enough connection" despite the fact that both he and she were nonresidents of Oregon, to enable her husband to sue her paramour, apparently also a nonresident of Oregon, for alienation of affections or criminal conversation, and to effect valid personal service upon him in another state under ORS 14.035(1)(b). Essentially the court relied upon a strong Oregon public policy against the alleged act.[2]

The public policy of Oregon to require the support of a child, legitimate or not, and to assure payment of necessary medical costs in connection with its birth cannot be questioned. *See: Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975); *Gostevskyh v. Kalugin,* 7 Or App 623, 625, 492 P2d 826 (1972).

In the latter case, we said:

"* * * Since Oregon's first filiation statute was passed in 1917,

" '* * * [I]t has been and is the policy of this state not only to permit but to require any man who is responsible for any unmarried female becoming pregnant * * * to pay [for the child's support] * * *.' *Dannels v. U.S. National Bank,* 172 Or 213, 241, 138 P2d 220, 231 (1943)." 7 Or App at 625.

I conclude here that a substantial connection with the state of Oregon and citizens of this state exists sufficient to warrant application of ORS 14.035.

Accordingly, I respectfully dissent.

---

[2] We note that since *Myers v. Brickwedel,* 259 Or 457, 486 P2d 1286 (1971), the legislature has, by Oregon Laws 1975, ch 562, abolished the right of action for alienation of affections and criminal conversation.