Argued September 29, affirmed November 6, petition for review denied
December 19, 1978

## C.O.W., INC., *Appellant,*
### *v.*
## MOTOR VEHICLES DIVISION et al, *Respondents.*
## (No. 101951, CA 10462)

586 P2d 107

T. W. Churchill, Salem, argued the cause for appellant. With him on the brief was Churchill & Leonard, Salem.

Michael C. McClinton, Salem, argued the cause for respondent Floyd N. Cass. With him on the brief was Clark, Marsh & Lindauer, Salem.

No appearance for respondent Motor Vehicles Division, Oregon Department of Transportation.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Plaintiff, a California corporation, appeals from a judgment dismissing its declaratory judgment action against defendant Cass, a California resident, ("defendant") following allowance of his motion to quash service of process had in California.[1]

■ Plaintiff alleged that as owner it lawfully came into possession of a 1966 White Freightliner truck and its certificate of title, that defendant "took" the certificate and caused it to be reissued to him by the Division, and that he claims to be the owner of the truck and refuses to acknowledge plaintiff's ownership. Plaintiff prayed for a judgment "declaring and adjudging the rights and duties of Plaintiff and Defendants in and relative to title to said vehicles; and further declaring that Plaintiff is the true legal owners * * *." Defendant moved to quash service. The motion was supported by his affidavit to the effect that he is a California resident, has not "engaged in the transaction of business in the State of Oregon," was served in California, does not presently have possession of the vehicle or certain knowledge of its location, and used it when he did possess it exclusively in California. The motion was allowed.[2] No evidence was taken at the hearing, and we are limited to the facts pleaded or stated in the affidavit. *State ex rel Advanced Dictating Supply v. Dale,* 269 Or 242, 246, 524 P2d 1404 (1974).

Plaintiff maintains that the trial court had "inherent jurisdiction," presumably under the first sentence

---

[1] The Motor Vehicles Division ("Division") has made no appearance in this court. As will appear, its role in the litigation was intended to be and is passive, rather like a stakeholder, but armed with a gaff hook.

[2] Defendant attempted in his affidavit to raise *forum non conveniens* and argues that the court's dismissal may be sustained on that ground. While a court having jurisdiction may decline to exercise it on the basis of *forum non conveniens* (*Broderick v. Rosener,* 294 US 629, 643, 55 S Ct 589, 79 L Ed 1100 (1935); *Gulf Oil Co. v. Gilbert,* 330 US 501, 504, 67 S Ct 839, 91 L Ed 1055 (1947)), absent jurisdiction the issue cannot be reached. *Myers v. Brickwedel,* 259 Or 457, 464-65, 486 P2d 1286 (1971).

of ORS 14.010,[3] because, it says, the issue is "who should be certificated as the owner of a truck which is titled, registered and licensed in this state." There is no claim that the truck is now or was in Oregon at the time defendant allegedly obtained possession of it or the former certificate of title. So the only "property" in Oregon within the meaning of the jurisdictional language is the "title," either as an abstract concept or a record in the Division.

If an abstraction is intended, it would be synonymous with ownership; and that would beg the question. What plaintiff would do is this: It sued defendant in this state, asserting as the jurisdictional foundation that the controlling record of "title" is in the Division's files. Because "title" can only be effectively altered by compliance with ORS 481.110(2),[4] it follows that by bringing in the Division "title" is effectively brought within the court's power and defendant can properly be required to defend its interests in an Oregon court. In effect, that appears to amount to a claim that property of defendant in the state has been in substance attached or sequestered and that the "title" is the subject matter of the lawsuit.

■ That will not wash, factually or constitutionally. Factually, a "title" out of the Division is not ownership. ORS 481.117 states in part:

"In all actions, suits or criminal proceedings when the title to, or right of possession of, any motor vehicle, trailer or semitrailer is involved, the record of registration and license, as it appears in the files and records of

---

[3] "No natural person is subject to the jurisdiction of a court of this state, unless he appear in the court, or be found within the state, or be a resident thereof, or have property therein; and in the last case only to the extent of such property at the time the jurisdiction attached."

[4] "No registration card or number plates for any motor vehicle, trailer or semitrailer, whether original issues or duplicates, shall be issued or furnished by the division or any officer charged with such duty, unless the applicant therefor, at the same time, makes application for and is granted an official certificate of title of such vehicle, or presents satisfactory evidence that a certificate of title covering such vehicle has been previously issued to the applicant. * * *"

the division is prima facie evidence of ownership or right to possession of such vehicle. * * *"

The litigation here is a dispute about whether plaintiff or defendant is the owner of the vehicle. While that issue might be helped to resolution by possession of a valid certificate of title, it would not necessarily be resolved by a declaration of the Division's duties. Ownership is strictly an issue only between plaintiff and defendant.

■ A more vital defect in plaintiff's argument is that constitutionally Oregon cannot base its jurisdiction on the title document foundation. To allow that would be in effect to permit to be done the equivalent of what Delaware was denied the power to do in *Shaffer v. Heitner,* 433 US 186, 97 S Ct 2569, 53 L Ed 2d 683 (1977).

■ Jurisdiction in an action against non-resident defendants was asserted under a statute permitting sequestration by the state court of documents having a situs in Delaware which were evidence of defendants' corporate ownership interests. The decision marked the one hundredth anniversary and death of the jurisdictional doctrine in *Pennoyer v. Neff,* 95 US 714, 24 L Ed 565 (1878), that a state could exercise jurisdiction solely on the basis of the presence of property in that state, even if the property were not itself the subject matter of the litigation. Instead, the court said,

"We conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe [Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945)], and its progeny." 433 US at 212.

Although the present case does not involve an attachment, sequestration or analogical formality, the result is the same. By making the Division a party because it has the records, and by requesting a determination of the Division's duties, plaintiff is attempting to put the defendant in the position of appearing generally or

[ 77 ]

suffering an undefended judgment against its interests. *Shaffer* tells us that is not constitutional due process.

The other purported bases for jurisdiction are ORS 14.035(1)(a) and (b).[5]

■ In the application of the "any business" test, we recognize that "any" is meant in its "unrestricted and comprehensive sense" (*Dickinson v. Leer,* 255 Or 274, 276, 465 P2d 885 (1970)). Still, we are not told by the pleading that the application for a certificate of title was a business transaction, nor have we been shown any authority that even suggests that that act was one of doing business. Assuredly it was in no reasonable sense business between this plaintiff and this defendant. *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 127, 448 P2d 571 (1968), supports this view.

■ That leaves the "commission of a tortious act within this state." *White Lbr., supra,* says:

"From the * * * cases, three criteria can be said to define the present outer limits of *in personam* jurisdiction based on a single act: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. * * *"

Although the first criterion arguably might be satisfied in this case, the second is not. Unlike the situation

---

[5] "(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state * * *."

[ 78 ]

in *Myers, supra,* n 2, where the complaint could be read to have pleaded a tort which became actionable because of acts that took place in Oregon, there is nothing in this complaint which would support a conclusion that plaintiff's cause of action arose in Oregon. The only fair reading of the complaint and the unrebutted affidavit of defendant is that the acts of taking possession of the truck and the certificate took place in California. Those acts, if they occurred and were wrongful, amounted to a completed conversion in California, which follows the common law definition that conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *English v. Ralph Williams Ford,* 17 Cal. App. 3d 1038, 95 Cal Rptr 501 (2d Dist 1971). Plaintiff's argument that a "fraud" took place in this state is not well developed, and that is understandable because nothing in the complaint could be read to allege a cause of action for fraud. The "long arm" could not reach this defendant. *Compare State ex rel Academy Press v. Beckett,* 282 Or 701, 715-718, 581 P2d 496 (1978).[6]

Affirmed.

**LEE, J.,** dissenting.

The majority's "stiff arm" treatment of Oregon's "long arm" statute (ORS 14.035) compels me to dissent.

This is a declaratory judgment proceeding in which plaintiff, a California corporation, sought to litigate ownership of a motor vehicle registered in Oregon. The complaint incorporated, by reference, documents showing that the vehicle was one of the items included

---

[6]The dissent, in addition to misunderstanding the *tort* which the plaintiff complains of, suggests that by attaching to the complaint a hotchpot of documents about a separate transaction that defendant is not even alleged to have known about, let alone have been a party to, the plaintiff can create long-arm jurisdiction. Relevant authority to support that would at least be an interesting curiosity. Like the Roc, it has never existed, so it cannot carry anything.

[ 79 ]

in a sales contract dated February 4, 1975, executed between a seller, who resided in Portland, Oregon, and a California corporation as buyer. The documents further show that seller was the holder of an Interstate Commerce Commission Certificate, issued May 27, 1960, authorizing him to haul "shingles and shakes" from 19 named Oregon counties "to points in California" and that partially executed escrow instructions, and amendments thereto, existed, naming an Oregon bank as escrow agent, in connection with the sale of the vehicle. The Motor Vehicles Division of the State of Oregon was apparently named as a defendant only because of its "stake-holder" capacity. Defendant Cass is a California resident who allegedly, "without authority," took the Oregon title certificate, which seller had endorsed in blank, and caused it "to be reissued in his own name." The complaint states:

"VI

"Plaintiff contends:

"1. That it is now the owner of the aforesaid 1966 White Freightliner, Serial No. AP 21338;

"2. That on or about July 9, 1976, Plaintiff was owner and in possession of the above-described White Freightliner and was then holding the Certificate of Title, endorsed in blank by Wiley M. Whittaker and Billie B. Whittaker;

"3. That on or about July 9, 1976, *Defendant Cass without authority took the aforesaid Oregon Certificate of Title, No. 7107711811, and caused the same to be reissued in his own name* by application to Defendant Oregon Motor Vehicles Division; and

"4. That Defendant Oregon Motor Vehicles Division issued Oregon Certificate of Title No. 7623900035 showing Defendant Cass as the registered legal owner of the aforesaid White Freightliner.

"VII

"Defendant Cass contends:

"1. That he is the legal owner of the aforesaid White Freightliner truck; and

"2. That title passed to him in payment of a debt owed to him.

[ 80 ]

"VIII

"Defendant Oregon Motor Vehicles Division, acting solely on the records as submitted to it, issued Oregon Certificate of Title No. 7623900035 to Defendant Cass.

"IX

"Defendant Cass refuses to acknowledge Plaintiff as the true legal owner of the aforesaid White Freightliner." (Emphasis supplied.)

Personal service was obtained upon Cass in California. He appeared specially and moved to quash service upon the ground that the court lacked "jurisdiction over his person and the subject matter of the alleged dispute." In support of his motion Cass attached an affidavit which stated in pertinent part:

"* * * I am a resident of California and have not, at any time material to the present action, engaged in the transaction of business in the State of Oregon.

"The vehicle described in Plaintiff's Complaint is no longer in my possession and is believed to have been stolen. However, when this vehicle was last in my possession, it was used by me exclusively in the State of California. Moreover, I have no information or reason to believe that it is not still located in California.

"I do not frequent the State of Oregon, and it will be a great inconvenience and expense for me to appear there in answer to the present Summons and Complaint."

The motion to quash was granted, plaintiff refused to plead further and the court entered a judgment of dismissal in favor of Cass.

Plaintiff contends (1) that the court had "inherent jurisdiction" over the dispute because the vehicle was certificated in Oregon, (2) that the "tests for jurisdiction" under Oregon's "long arm" statute, ORS 14.035, were met on either a "business" or "tort" theory and (3) that there was "fairness" to Cass in the proferred case. I dissent because it appears to me that the court *did have* jurisdiction under ORS 14.035(1)(a) because Cass transacted "business within this state" by having the Oregon title reissued, so I do not reach the other issues.

ORS 14.035 provides in pertinent part:

"(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a) The transaction of *any* business within this state;
"* * * * *

"(4) Only causes of action or suit or proceedings arising from acts enumerated in this section may be asserted against a defendant in an action or suit or proceeding in which jurisdiction over such defendant is based upon this section.

"* * * * *." (Emphasis supplied.)

In *State ex rel Western Seed v. Campbell,* 250 Or 262, 271, 442 P2d 215 (1968), *cert den* 393 US 1093 (1969), the court noted that ORS 14.035 had been copied from an Illinois statute and stated:

"The Illinois statute was intended to exploit the *outer limits* of due process in aid of Illinois litigants. See Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U Ill L F 533. It is reasonable, therefore, to hold that a statute modeled after the Illinois statute *should be interpreted in Oregon as broadly as constitutional due process will permit.*" (Emphasis supplied.)

In *Dickinson v. Leer,* 255 Or 274, 276, 465 P2d 885 (1970), plaintiff sued on a contract of employment made in Oregon and obtained service on defendant in Alaska. The court denied defendant's motion to quash service and stated:

"* * * [A]s used in ORS 14.035, it appears to us that *the legislature intentionally used the word 'any' in an unrestricted and comprehensive sense to include every legitimate business transaction,* regardless of its nature, and is not to be limited to the sale, purchase or exchange of commodities. * * *" (Emphasis supplied.)

In *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 124-25, 448 P2d 571 (1968), defendant plywood buyer

made a telephone call from Florida to plaintiff seller in Oregon. Defendant moved to quash on the grounds of "fairness and justice." The court held that there was jurisdiction and stated:

> "When jurisdiction over an out-of-state defendant is challenged, the due-process question is whether the alleged facts are such that the forum may exercise jurisdiction without offending traditional notions of fair play and substantial justice. *Internat. Shoe Co. v. Washington,* 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945). *If we can answer that question in favor of jurisdiction, there is no constitutional impediment to holding that the alleged facts constitute, within the meaning of ORS 14.035 (1)(a), the transaction of business within this state."* (Emphasis supplied.)

The court further stated:

> "* * * So long as the defendant is not compelled to defend himself in a distant state with which he has had *no relevant connection,* he cannot be said to have been denied either fair treatment or substantial justice. * * *" *State ex rel White Lbr. v. Sulmonetti, supra* at 127. (Emphasis supplied.)

The Court then enunciated a three-way test to determine the "outer limits of *in personam* jurisdiction based on a single act":

> "* * * First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. * * *." *State ex rel White Lmbr. v. Sulmonetti, supra* at 127.

In *State ex rel Academy Press v. Beckett,* 282 Or 701, 711, 581 P2d 496 (1978), which involved a motion to quash service in an action brought by an Oregon author against an Illinois publisher, the court found jurisdiction under ORS 14.035(1)(a) and stated:

> "This court has adopted 'fairness' as the test of whether, as a matter of constitutional due process, a

[ 83 ]

nonresident can be required to litigate in Oregon, as stated by the Supreme Court of the United States in *International Shoe Company v. State of Washington,* 326 US 310, 316 (1945), as follows:

"'* * * [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present in the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice".'" (Emphasis supplied.)

Further, the Court took cognizance of 1 Restatement of Conflict of Laws 2d (1971) § 37 which states:

"' A state has power to exercise judicial jurisdiction over an individual *who causes effects in the state* by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.'" (Emphasis supplied.)

In the instant case Cass caused "effects" in Oregon by having the title to the vehicle reissued in his name. That act generated the cause of action alleged by plaintiff. The exact relationship between Cass and the sales contract, which included the vehicle, the Oregon escrow, and the "endorsed in blank" title certificate, is not clear from the present state of the record but it is fair to infer that since those documents were made a part of the complaint they have some relevance. Under these facts I would hold that the reissuance of the title to the vehicle in Oregon has a substantial enough connection to make the exercise of jurisdiction over Cass reasonable.

The majority's reliance on *Shaffer v. Heitner,* 433 US 186, 97 S Ct 2569, 53 L Ed 2d 683 (1977), is misplaced because that case involved the sequestration of stock, options, warrants, and various corporate rights of the defendants which were *unrelated* to plaintiff's cause of action. The court expressly invoked the "fairness" standard of *Internat. Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95, 161

ALR 1057 (1945), which was the crucial issue in *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 124, 448 P2d 571 (1968). *Shaffer* supports rather than precludes, Oregon jurisdiction.

Applying the three-way test enunciated by the Court in *State ex rel White Lbr. v. Sulmonetti, supra* at 127, the majority concedes that plaintiff in the instant case met the *first* criterion of purposefully availing himself of the privilege of acting in Oregon but concludes that the *second* criterion of causing "consequences in the forum state" was not met. I disagree on the latter conclusion. Plaintiff's need to determine the true ownership of the vehicle was a direct *consequence* of the action of Cass in having the title reissued in his name. As to the *third* criterion of whether the act of having the title reissued had a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable," I again reach an affirmative conclusion because that act was the very genesis of plaintiff's cause of action.

Taking into account that: (1) the alleged seller was a resident of Oregon; (2) an Oregon bank was the escrow agent; (3) the vehicle was certificated in Oregon; (4) the seller who endorsed the certificate in blank was an Oregon resident; and (5) Cass had the title reissued in Oregon — *in fairness,* Oregon should be the forum to litigate the ownership of the vehicle regardless of where it might physically be at any given moment in time.

I would reverse; therefore, I respectfully dissent.[1]

---

[1] The "Roc" comments which appear in footnote 6 of the majority opinion reveal a Neanderthal reluctance to accept the standards of "fairness" and "substantial justice" espoused in *Internat. Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95, 161 ALR 1057 (1945), and its progeny. They were expressly approved in *Shaffer v. Heitner,* 433 US 186, 212, 97 S Ct 2569, 53 L Ed 2d 683 (1977), on which the majority relies. The Oregon Supreme Court had previously noted *Internat. Shoe Co.* in *State ex rel White Lbr. Co. v. Sulmonetti,* 252 Or 121, 124, 448 P2d 571 (1968), before enunciating the three-way test on which I relied in my

dissent. A revealing article concerning the evolution of *in personam* jurisdiction is Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U Ill L F 533. I hearken to the chirping of the tomtits heralding "fairness" and "substantial justice" and deny any resemblance to the legendary "Roc."