Argued and submitted May 7, 1999, decision of Court of Appeals and judgment of circuit court affirmed February 17, 2000

## OAK CREST CONSTRUCTION COMPANY,
*Petitioner on Review,*

*v.*

## AUSTIN MUTUAL INSURANCE COMPANY,
a Minnesota corporation,
*Respondent on Review.*

(CC 93C13423; CA A84861; SC S42855)

998 P2d 1254

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, McCann & Smith, Salem, argued the cause and filed the brief for petitioner on review.

Carl Amala, of Harris, Wyatt & Amala, Salem, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

** Leeson and Riggs, JJ., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is an action for breach of a standard commercial liability insurance contract. Plaintiff, a general contractor, filed the action when its insurer refused to reimburse it for the cost of removing and replacing a subcontractor's painting work that had been applied during the construction of a custom home and had failed to cure properly. The trial court granted the insurer's motion for summary judgment. The Court of Appeals affirmed, holding that plaintiff's claim did not fall within the coverage terms of the policy, because the damage at issue had not been "caused by an occurrence," as the insurance contract required. *Oak Crest Const. Co. v. Austin Mut. Ins. Co.*, 137 Or App 475, 479-80, 905 P2d 848 (1995). Plaintiff sought review by this court. We allowed review to consider whether the event at issue is one covered by the commercial liability policy. We conclude that it is not and affirm.

At the time of the relevant events, plaintiff was insured under a commercial liability policy issued by defendant. The policy contained two coverage provisions that plaintiff asserts are relevant. Coverage L, providing coverage for bodily injury and property damage liability, stated in part:

> "We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or *property damage* to which this insurance applies. The bodily injury or *property damage* must be caused by an *occurrence*."

(Emphasis added.) Coverage N, providing coverage for products and completed work, stated:

> "We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or *property damage* arising out of the Products/*Completed Work Hazard* to which this insurance applies. The bodily injury or *property damage* must be caused by an *occurrence*."

(Emphasis added.) The policy also included the following definitions:

> "*Occurrence* - This means an accident and includes repeated exposure to similar conditions.

"*Property damage* - This means:

"a.   physical injury or destruction of tangible property; or

"b.   the loss of use of tangible property whether or not it is physically damaged.

"*Completed Work Hazard* means bodily injury or property damage arising out of your work. It does not include work that has not been completed, or that has been abandoned."

Finally, the policy also included the following exclusions:

"We do not pay for bodily injury or property damage liability which is assumed under a contract or an agreement.[1]

"* * * * *

"We do not pay for property damage to work performed by you if the damage is caused by the work or a part of the work and included in the Products/Completed Work Hazard. This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on your behalf."[2]

While the foregoing policy provisions were in force, plaintiff entered into a contract to build a custom home and hired a subcontractor to paint the cabinets and other interior woodwork. After the subcontractor had completed the painting work, plaintiff turned the home over to the owners. It became apparent, at that time, that the paint that the subcontractor had used had not cured properly and that the deficiency would have to be corrected. Plaintiff thereafter expended approximately $10,000 for stripping and refinishing the cabinets and woodwork.

Plaintiff submitted a claim to defendant, seeking reimbursement of the $10,000 spent on the cabinets and woodwork. When defendant refused to pay, plaintiff filed the present action, alleging breach of the insurance contract and

---

[1] This exclusion appears in a section of the policy entitled "Exclusions that Apply to all Coverages."

[2] This exclusion appears in a section of the policy entitled "Additional Exclusions that Apply to Property Damage Liability."

seeking $10,240.00 in damages, together with attorney fees. Defendant answered, denying that plaintiff's claim was covered by the policy.

Defendant moved for summary judgment, appending a copy of the insurance policy and arguing, in rather general terms, that the policy did not allow for the recovery of plaintiff's costs in repairing the defective painting work. Plaintiff also moved for summary judgment, arguing that the repair costs were covered under the Completed Work Hazard provisions of Coverage N. In responding to plaintiff's motion, defendant argued, among other things, that plaintiff's costs in repairing the defective paint did not arise from an "accident," but, instead, arose from the requirements of its contract with the homebuyers:

> "Basically, plaintiff * * * has alleged that because of its building contract with the [owners], it was necessary for the plaintiff to repair or replace defective painting work caused by its subcontractor. Plaintiff *does not,* and in good faith *cannot,* allege that this work was made necessary because of 'an accident.' "[3]

(Emphasis in original.) In reply, plaintiff cited the definition of "accident" that appears in *Finley v. Prudential Ins. Co.,* 236 Or 235, 388 P2d 235 (1963), and argued that, because the result in this case was unintended by the insured, it was accidental.[4]

The trial court granted summary judgment for defendant. In a letter opinion to the parties, the court stated that there had been an "occurrence" under the facts of the case, but agreed with defendant that coverage was excluded because plaintiff's liability for the cost of repairing the defective paint was based in contract, rather than tort:

> "This liability [for which plaintiff is seeking reimbursement from defendant] would [a]rise under a contract. * * *

---

[3] Defendant also made a related argument that plaintiff's claim was excluded under the policy exclusion for "liability * * * assumed under a contract," set out above.

[4] *Finley* states that an "accident" is "an incident or occurrence that happened by chance, without design and contrary to intention and expectation." *Finley,* 236 Or at 245.

Plaintiff's liability is based upon contract and not tort or statute."

In the context of the arguments that preceded it, it appears that the trial court was speaking to the exclusion for "liability * * * assumed under a contract."[5]

Plaintiff appealed, arguing that its claim was covered under the policy's "completed work" provisions and that the various exclusions asserted by defendant, including the exclusion for "liability * * * assumed under a contract," were inapplicable. In response, defendant argued that the claimed damage was not "caused by an occurrence" within the meaning of the policy, because it did not result from accidental *means*. Defendant also continued to press its original point— that plaintiff's costs in fulfilling its obligations under its contract were not covered:

"[P]laintiff Oak Crest repainted the woodwork in the [owners'] new home to comply with the interior 'painting' requirement of its building contract with the [owners]. * * * Plaintiff Oak Crest is not entitled to have the insurer pay for plaintiff's costs in simply completing its construction agreement with the [owners]."

In reply, plaintiff argued that defendant's "means/results" argument should not be considered, because defendant had failed to cross-assign that portion of the trial court's ruling as error. Plaintiff did not reply to defendant's latter argument.

As noted, the Court of Appeals affirmed. That court based its decision on defendant's contention that there was no "occurrence," because the damage at issue did not arise from accidental means. In deciding the case on that ground, the court rejected plaintiff's suggestion that a challenge to the trial court's "occurrence" conclusion was precluded in light of defendant's failure to cross-assign error with respect to it. In that regard, the court noted that, under ORAP 5.57, a trial court's rulings, and not the various reasons that it gives in support of a ruling, are assignable as error. Defendant's "occurrence" argument, the court concluded, was

---

[5] We need not decide whether that exclusion might have been the wrong one on which to focus. The trial court's ruling on this summary judgment record was correct for the reasons discussed below.

merely an argument that the trial court was right for the wrong reason which, for the reasons discussed in *Artman v. Ray*, 263 Or 529, 532-34, 501 P2d 63 (1972), does not require a cross-assignment of error. *Oak Crest*, 137 Or App at 478 n 2.

Plaintiff challenges the Court of Appeals' decision on two grounds: First, plaintiff argues that the court had no authority to consider defendant's "occurrence" argument, because defendant failed to cross-assign as error the trial court's determination to the contrary. Second, plaintiff argues that the court erroneously focused on whether the cause of the damage, rather than the damage itself, was accidental.

■ Concerning plaintiff's first argument, we agree with the Court of Appeals: The requirement of cross-assignment in ORAP 5.57 applies to *rulings*[6] and is not implicated when the respondent embraces the ruling and seeks only to challenge the trial court's *reasoning*.

■ As noted, plaintiff's second argument is directed at the means/results rationale used by the Court of Appeals to conclude that the asserted damage was not "caused * * * by an occurrence." We conclude, however, that we need not consider the correctness of that particular rationale because a different rationale—one that defendant has pressed from the beginning—supports the Court of Appeals' affirmance and its conclusion that the events at issue in this case did not amount to an "accident."

This court has indicated that there can be no "accident," within the meaning of a commercial liability policy, when the resulting damage is merely a breach of contract. In *Kisle Fire v. St. Paul & Marine Ins.*, 262 Or 1, 495 P2d 1198 (1972), the plaintiff, a rancher, contracted with a company to

---

[6] ORAP 5.57 provides:

"(1) A respondent must cross-assign as error any trial court ruling described in subsection (2) in order to raise the claim of error in the appeal.

"(2) A cross assignment of error is appropriate:

"(a) If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b) If the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court."

repair his sprinkler system. The repair company failed to perform the repairs in a timely manner; plaintiff's alfalfa crop was damaged as a result. The defendant had issued a commercial liability policy to the repair company that contained a definition of "occurrence" that was analogous to the one at issue in the present case. When the plaintiff sued the repair company, the company tendered the defense to the defendant, which refused it. The plaintiff settled his action against the repair company and took an assignment of the company's claim against the defendant. The trial court entered judgment for the plaintiff.

In *Kisle,* this court considered whether, and when, an "accident" might arise out of a failure to perform a contract. The court first acknowledged that, in some circumstances, property damage that results from the negligent performance of a contract can qualify as being "caused by accident." But, as the court explained, " 'accident' has a tortious connotation" and exists only when damage results, in some sense, from a tort, *i.e.,* a breach of some duty imposed by law. *Id.* at 7. The court then explained that, although negligent performance of a contract might cause damage by "accident," there is no tort and no "accident" when the damage results solely from the complete failure of timely performance of a contract, generally actionable only as a breach of contract:

> "We find [that] there is a significant distinction between negligent performance of a contract and a complete failure of timely performance. We hold that damage caused by the latter is not caused by accident.
>
> "We do not need to definitely define 'accident'; however, we do hold that 'accident' has a tortious connotation. Damage solely caused by failure to perform a contract is not recoverable in tort. A tort is a breach of a duty created by law and not necessarily by the agreement of the parties. * * * Damage caused by the negligent performance of a contract can in certain instances be recoverable in tort. * * * This is because by contract the parties have entered into a relationship in which the law requires, apart from any obligation assumed by contract, that the obligor act with due care. For example, if a physician contracts to treat a patient and treats the patient negligently, he is liable in tort

because the law, apart from contract, imposes a duty upon the physician to treat patients with due care. * * * [However], [d]amages caused by a failure to perform 'amount to mere breaches of contract, for which no tort action will lie.' "

*Id.* at 6-7 (citations omitted).[7]

We recognize, as we did in *Kisle*, that the same conduct might be actionable under both tort and contract theories. However, applying the foregoing principle to the facts in the summary judgment record in the present case, we conclude that, as alleged, plaintiff's claim arose solely from a breach of contract and, therefore, is not covered by the policy. Although the record establishes that plaintiff spent approximately $10,000 for the repair of a subcontractor's "deficient" painting work, it cannot support a conclusion that the problem with the cabinetry and woodwork painting resulted from the subcontractor's breach of a duty to act with due care.[8]

---

[7] Courts in other jurisdictions have made similar observations in terms of the risks covered by commercial liability policies. *See, e.g., Knutson Const. v. St. Paul Fire & Marine Ins.*, 396 NW2d 229, 235-37 (Minn 1986) (distinguishing faulty workmanship that causes business expense of repairing work from faulty workmanship that results in tort liability); *Weedo v. Stone-E-Brick*, 81 NJ 233, 405 A2d 788 (1979) (same). See also the following much quoted passage from Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations — What Every Lawyer Should Know*, 50 Neb L Rev 415, 441 (1971):

"The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

[8] We draw our conclusion from the affidavit filed by plaintiff's principal. The affidavit recites that plaintiff's subcontractor painted cabinets and other woodwork in the home, and that the following events then occurred:

"Thereafter, for a period of approximately 2-3 weeks the remaining construction was completed, and the home [was] turned over to the [owners], who moved in. At that time any work that would have been remaining would have only been such tasks necessary to correct or repair any defect or deficiency in the construction.

"After the [owners] took possession of the home it became apparent that the painting work performed by [subcontractor] was not properly curing, and would require additional expense to correct any deficiency. I therefore incurred expense in the amount of $10,240.00 to correct the deficiencies in the work."

Attached to the affidavit was a bill that showed that those work "deficiencies" were corrected by stripping and refinishing the cabinets and woodwork.

Had the facts demonstrated that the claimed problem with the cabinets and woodwork was the result of that kind of breach, or that plaintiff might be liable to the owners in tort for other damage, that might have qualified as an "accident" within the meaning of the commercial liability policy. But plaintiff here failed to establish that a question of fact existed in that regard, as plaintiff was required to do to show that there had been a covered event under the policy. For the foregoing reasons, we conclude that the Court of Appeals correctly held that the problem with the cabinetry and woodwork painting work at issue in this case was not "caused by accident" within the meaning of plaintiff's commercial liability policy.

The same reasoning defeats plaintiff's alternative argument that it was entitled to be indemnified under the policy's "completed work" provision: The property damage covered by that provision must have arisen out of an "accident." There is no proof of an accident in the record of this case on summary judgment. The trial court's grant of summary judgment to defendant therefore was proper.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.