Argued and submitted October 5, 2018, reversed and remanded
December 26, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANGELA CHRISTINE JUDD,
*Defendant-Appellant.*

### Deschutes County Circuit Court
### 16CR07389; A163385

457 P3d 316

Defendant smothered her grandmother, who was in hospice care, with a pillow. During a counseling session, defendant later confessed to the homicide to Jones, a licensed clinical social worker and mandatory reporter under ORS 124.050 (9)(g) and ORS 124.060. That confession led to defendant's conviction, pursuant to a conditional guilty plea, for second-degree manslaughter. On appeal, defendant assigns error to the trial court's denial of her motion to exclude statements that she made to Jones. Defendant argues that the trial court erred in ruling that the mandatory elder abuse reporting statutes abrogate the psychotherapist-patient privilege, OEC 504, so as to allow for testimony in judicial proceedings. Defendant also assigns error to the court's determination, in response to her motion to exclude statements under Oregon's corpus delicti rule, that her statements were confessions that were sufficiently corroborated. See ORS 136.425(2). *Held*: The trial court erred in denying defendant's motion to exclude on the basis of privilege, because the elder abuse reporting statutes only abrogate privileged communications insofar as to permit the submission of the statutorily required report of elder abuse. The trial court did not err in denying defendant's corpus delicti motion, because that rule does not provide a basis for excluding evidence.

Reversed and remanded.

Alta Jean Brady, Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

## LAGESEN, P. J.

After her grandmother began receiving hospice care, defendant smothered her with a pillow. Defendant reported the death as a natural one but later sought counseling with a social worker, to whom she disclosed the homicide. The social worker, a mandatory reporter of elder abuse under ORS 124.050(9)(g) and ORS 124.060, reported defendant's conduct to law enforcement as required by ORS 124.065. This ultimately led to defendant's conviction, pursuant to a conditional guilty plea, for second-degree manslaughter. The primary issue before us is the extent to which the elder abuse reporting statutes abrogate the psychotherapist-patient privilege contained in OEC 504, as that privilege applies to communications between a licensed clinical social worker and her patient. Based on the text, context, and legislative history of the elder abuse reporting statutes, we conclude that they abrogate the OEC 504 privilege only insofar as to permit a report of suspected elder abuse but do not abrogate it further. In particular, the statutes do not abrogate the privilege so as to allow for testimony in judicial proceedings. Because the trial court erroneously concluded otherwise, we reverse and remand.

## I.   BACKGROUND

Because defendant's conviction is the product of a guilty plea, the facts about defendant's crime were not fully developed below. As defendant has done in her opening brief, we draw them from the evidence presented at the preliminary hearing on defendant's pretrial motions.

Defendant's grandmother, N, died at age 92 shortly after entering hospice care. In the four years leading up to N's death, defendant had been her primary caregiver. During that time, defendant had been paying N's rent, which was $1,980 per month and did not include medical care. Defendant was concerned about the cost of N's care and housing. After N began requiring hospice care, defendant began telling others that N was going to die soon.

Although N was in declining health, on the morning of the day of her death she was conversational, alert, and seemed to be in little pain. She recognized her

great-granddaughters when they visited and was eating and drinking. Despite this, defendant told her daughter that she did not think N "would pull through the night." Roughly 12 hours before N died, defendant canceled all of N's services, including her meal services. Defendant did this even though N had no food in her apartment except for some doughnuts. That night, while alone with defendant, N died. Defendant reported N's death to hospice as a natural one.

Several weeks later, defendant sought counseling from Jones through her employer's employee-assistance program. Jones is a licensed clinical social worker who is authorized to provide mental-health counseling. At the counseling session, Jones told defendant that she is a mandatory reporter. Defendant responded that she was a nurse, so she was a mandatory reporter as well, and she understood what that meant. Defendant told Jones that 10 days before N died, N's health began to rapidly decline. Defendant was concerned that N's lungs would fill with fluid, N would develop a "death rattle," and N would suffer for days until she drowned. Defendant told Jones that she emotionally struggled with what to do about N's condition before deciding to kill her; defendant stroked N's face, told her she loved her, put a pillow on N's face, and laid on top of her. N physically struggled while defendant smothered her. Defendant told Jones that she felt "angry, guilty, and ashamed" about it.

Immediately after the counseling session, Jones reported defendant to law enforcement. Jones was told not to disclose to defendant that she had made the report. Defendant and Jones met for a second counseling session. At that session, defendant disclosed further that she had made the decision to kill N early in the morning while sober, and that she drank two glasses of wine that day to "get the courage."

Defendant was charged by information with one count of murder, ORS 163.115. She then moved to exclude evidence of the statements that she had made to Jones. She did so on two grounds: (1) that the statements were uncorroborated confessions that, in defendant's view, Oregon's *corpus delicti* rule required the court to exclude from evidence; and

(2) that the statements were privileged under either OEC 504 (psychotherapist-patient privilege) or OEC 504-4 (regulated social worker-client privilege). The trial court denied the motion. Rejecting defendant's motion under the *corpus delicti* rule, the court determined that, although defendant's statements to Jones were confessions, those confessions were sufficiently corroborated. As to defendant's motion based on privilege, the court first ruled that defendant's statements to Jones were protected by the psychotherapist-patient privilege, OEC 504, and possibly the regulated social worker-client privilege, OEC 504-4. The court next ruled that the elder abuse reporting statutes abrogated that privilege so as to permit Jones both to report her belief that defendant had abused N and to testify in subsequent judicial proceedings about defendant's statements to her about her treatment of N, ultimately concluding as a matter of law that "[s]tatements made by Defendant to Jones related to elder abuse are not privileged."

Following the trial court's ruling, defendant conditionally pleaded guilty to one count of second-degree manslaughter. She reserved the court's ruling denying her motion to exclude her statements made to Jones on the bases of the *corpus delicti* rule and privilege. On appeal, defendant assigns error both to the court's denial of her motion to exclude her statements to Jones on the grounds of privilege and also to the court's determination, in the context of its denial of defendant's motion to exclude evidence of her statements to Jones under Oregon's *corpus delicti* rule, that those statements were sufficiently corroborated.

## II.  ANALYSIS

### A.  *Privilege*

On appeal, the state does not dispute the trial court's conclusion that, but for the elder abuse reporting statutes, defendant's statements to Jones are privileged under OEC 504. Instead, at issue is the extent to which the elder abuse reporting statutes abrogate that privilege. Defendant contends first that Jones, although a social worker, qualifies as a "psychologist" or "psychiatrist" for purposes of ORS 124.060, such that the privilege was not abrogated at all.

Alternatively, defendant contends that, even if ORS 124.060 abrogated the OEC 504 privilege applicable to her statements to Jones, it did so only insofar as to allow for Jones to make a report of elder abuse but did not abrogate the privilege so as to allow the admission of defendant's statements in a judicial proceeding. The state responds that a social worker is not a "psychologist" or a "psychiatrist," and, further, that the elder abuse reporting statutes abrogate the privilege for purposes of judicial proceedings triggered by a report of elder abuse.

The issue of the extent to which the elder abuse reporting statutes abrogate the OEC 504 privilege presents a question of statutory construction, so we review for legal error. *Burley v. Clackamas County*, 298 Or App 462, 464, 446 P3d 564, *rev den*, 365 Or 721 (2019). To answer that question, we consider the text of ORS 124.060 in context, taking into account any relevant legislative history, *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), and conclude that (1) a social worker is not a "psychiatrist" or a "psychologist" for purposes of ORS 124.060, but (2) ORS 124.060 abrogates the OEC 504 privilege only insofar as to allow for a report of elder abuse.

ORS 124.060 provides:

"(1)   Any public or private official having reasonable cause to believe that any person 65 years of age or older with whom the official comes in contact has suffered abuse, or that any person with whom the official comes in contact has abused a person 65 years of age or older, shall report or cause a report to be made in the manner required in ORS 124.065.

"(2)   Nothing contained in ORS 40.225 to 40.295 affects the duty to report imposed by this section, except that a psychiatrist, psychologist, member of the clergy or attorney is not required to report such information communicated by a person if the communication is privileged under ORS 40.225 to 40.295."

Defendant first points to the exception to the elder abuse reporting requirement afforded to psychologists by ORS 124.060(2) and argues that the exception should extend to social workers who, like Jones, provide counseling services

in which communications are otherwise protected by the OEC 504 privilege. In particular, defendant contends that the dictionary definition of "psychologist" is broad enough to encompass a social worker who provides counseling services. *Webster's Third New Int'l Dictionary* 1833 (unabridged ed 2002) defines "psychologist" as "a student of the mind or of behavior" or "a specialist in one or more branches of psychology; *esp*: a practitioner of clinical psychology, counseling, or guidance." She argues that we should conclude that the broad definition is what the legislature intended when it referred to a psychologist in ORS 124.060.

We are skeptical. In ordinary discourse, the word "psychologist" tends to suggest the more particularized part of the *Webster's* definition: "a specialist in one or more branches of psychology." Regardless, a dictionary definition "should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself." *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015). Here, the context and legislative history of ORS 124.060 demonstrate that the legislature did not intend the term "psychologist" to include a social worker.

First, context: ORS 124.050(9) specifies who qualifies as a "public or private official" required by ORS 124.060(1) to report suspected elder abuse. Significantly, it differentiates between psychologists and social workers. It provides, in relevant part:

"'Public or private official' means:

"* * * * *

"(d)  Employee of the Oregon Health Authority, local health department or community mental health program.

"* * * * *

"(g)  Regulated social worker.

"* * * * *

"(k)  Licensed professional counselor or licensed marriage and family therapist.

"* * * * *

"(n)  Psychologist."

ORS 124.050(9). That the legislature distinguished between psychologists and social workers—as well as between psychologists and other types of persons who provide counseling services—is a strong indication that the legislature did not view social workers (or other nonpsychologists providing mental health services) as psychologists for the purposes of ORS 124.060. Had the legislature intended to take a different tack in ORS 124.060 than the one it took in ORS 124.050(9), making the word "psychologist" a catch-all term encompassing all those who provide mental health services, we expect that it would have been more explicit about it.

What context signals, legislative history confirms. The legislature enacted the exceptions to the elder abuse reporting requirements contained in ORS 124.060(2) in 2009; as initially enacted in 1981, the statute contained no exceptions to the reporting requirement. *Former* ORS 410.630 (1981), *renumbered as* ORS 124.060 (1995). Contemplating the scope of the exceptions, John McCully, who represented the Oregon Psychiatric Association, and Representative Chip Shields, discussed how the provision, as written, extended only to psychiatrists and psychologists, and not to other providers of mental health services, including social workers:

"[SHIELDS]: So with a licensed accredited social worker [the exemption] would not apply to them—they would have to report even if they were in the same kind of therapeutic relationship?

"[MCCULLY]: Madam Co-Chair, Mr. Co-Chair, that is correct. The way this is written only psychologists and psychiatrists have that privilege.

"[SHIELDS]: Hmm, okay—that just—it's kind of too late in the game and probably was something that was hashed out in the policy but it seems to me that a lot of the therapeutic work that's done these days is done by counselors and social workers, psychiatrists come in and prescribe but they often do not have the therapeutic relationship directly as much as they might have ten or fifteen years ago, and it might just be something we look at next session to see if that's the perfect fit."

Audio Recording, Joint Committee on Ways and Means, Subcommittee on Public Safety, SB 670, June 15, 2009, at 12:45 (statements of John McCully and Rep Chip Shields), http://olis.leg.state.or.us (accessed Oct 15, 2019).

In sum, we see no indication that the legislature intended the word "psychologist" in ORS 124.060 to include a social worker such as Jones. For that reason, ORS 124.060(2) did not except Jones from the reporting requirement contained in ORS 124.060(1), and ORS 124.060(1) abrogated defendant's OEC 504 privilege at least insofar as to allow Jones to make the report required by ORS 124.060(1).

That leaves the question of how far that abrogation extends. That is, did the legislature intend to abrogate the privilege so as to permit evidentiary use of defendant's statements to Jones in the context of a judicial proceeding? Defendant contends that, if the duty to report elder abuse under ORS 124.060 abrogates the psychotherapist-patient privilege under OEC 504, then the privilege is only abrogated to the extent that the psychotherapist must file a report; any disclosure by the psychotherapist beyond the report would violate the defendant's privilege. In support of her argument, defendant points out that the child abuse reporting statute is similarly written, but, under ORS 419B.040(1), it specifically allows *evidence* of child abuse to be admitted in a judicial proceeding notwithstanding privilege, while the elder abuse statute only requires an initial report. The state counters that reading the duty to report as ending with the making of the report frustrates the purpose of the statute. The text, context, and legislative history of ORS 124.060 show that defendant's construction of the statute is correct.

As noted, the state and defendant all agree that Jones was a psychotherapist as defined by OEC 504 because defendant consulted Jones for the purpose of receiving mental-health treatment and Jones was authorized to provide it. Jones was, therefore, bound by psychotherapist-patient privilege, and any disclosure of those communications required a waiver or statutory exception to that privilege. That exception came in the form of a statutorily

mandated requirement to report suspected elder abuse under ORS 124.060(1):

> "Any public or private official having reasonable cause to believe that * * * any person with whom the official comes in contact has abused a person 65 years of age or older, shall report or cause a report to be made in the manner required in ORS 124.065."

Thus, Jones properly reported defendant's confession notwithstanding the privilege because the legislature mandated that she must do so.

Notably absent from the elder abuse statutes is any provision indicating explicitly that the legislature intended to abrogate otherwise applicable privileges for purposes other than an initial report. This silence suggests that the abrogation extends only so far as authorized by ORS 124.060 for the making of a report.

The state acknowledges that the legislature did not expressly provide that it was abrogating the privilege to allow for the disclosure of otherwise privileged statements outside the context of an initial report, but argues that we should infer that that was the legislature's intent from ORS 124.075(1), which provides:

> "Anyone participating in good faith in the making of a report of elder abuse and who has reasonable grounds for making the report shall have immunity from any criminal or civil liability that might otherwise be incurred or imposed with respect to the making or content of such report. *Any such participant shall have the same immunity with respect to participating in any judicial proceeding resulting from such report.*"

(Emphasis added.) The state argues that, by granting immunity from suit for participation in the judicial process, ORS 124.075(1) anticipates that a person who files a report would properly be required "to provide evidence in the ensuing investigation and criminal proceeding." This, according to the state, signals the legislature's intention to abrogate the OEC 504 privilege for the purpose of judicial proceedings that follow a report.

For two reasons, we reject that contention. First, the state's argument overlooks the fact that many of the people required to report elder abuse are not subject to any sort of evidentiary privilege. The list of officials who are required to report abuse under ORS 124.050(9) is long, and immunity for mandatory reporters from criminal and civil liability applies mostly to categories of public and private officials who typically will not be bound by any sort of privilege at all; members of the legislative assembly, firefighters, and peace officers, just to name a few, are all mandatory reporters who would not be bound by privilege but would still benefit from immunity to suit. ORS 124.050(9)(e), (L), (m). For that reason, it is difficult to infer from the legislature's decision to provide immunity to mandatory reporters a decision to abrogate otherwise applicable privileges that may apply to communications with some subset of mandatory reporters.

The state further contends that allowing only a report to be made without further participation in judicial proceedings would frustrate the purpose of the statute because that would not protect the elderly. However, notification of authorities in the form of a mandatory report would still protect the victim in many instances simply by virtue of involving the authorities. In other words, it is not unreasonable to think that the legislature could have determined that it could adequately protect the elderly by abrogating applicable privileges to require reporting but no more, striking a balance between the need to protect the elderly and the need to encourage people to seek mental-health treatment by ensuring that communications made in the course of such treatment remain privileged.

All of that aside, however, the enactment history of the elder abuse statutes demonstrates that the legislature expressly considered and rejected abrogating otherwise-applicable privileges outside the context of an initial report, as the legislature had done in the child abuse reporting statutes on which it modeled the elder abuse reporting statutes.

The child abuse reporting statutes were enacted in 1971 and included the provision that made certain privileges not grounds for excluding evidence. *Former* ORS 418.775

(1971), *repealed by* Or Laws 1993, ch 546, § 141.[1] The elder abuse reporting statutes were enacted 10 years later with House Bill (HB) 2865 (1981), and their wording mirrored the child abuse statutes, except they did not contain a provision providing that certain privileges were not grounds for excluding evidence. *See, e.g.*, *former* ORS 410.630 (1981). The legislative history shows that the original version of HB 2865 included a provision modeled after *former* ORS 418.775 (1971), but that that provision was intentionally deleted after extensive discussion by the Senate.

As first proposed, section 10 of HB 2865 provided:

"In the case of abuse of any elderly person, the physician-patient privilege, the husband-wife privilege, and the privilege extended under ORS 44.040 shall not be a ground for excluding evidence regarding the abuse of the elderly person, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to section 3 of this Act."

Exhibit B, House Committee on Aging and Minority Affairs, HB 2865, Apr 14, 1981 (accompanying statement of Rep Joyce Cohen, who sponsored the bill). After the legislature discussed some of its concerns regarding whether section 10 would require clergy members to report abuse, William Perrin—who was Vice Chairman of the Joint State Legislative Committee of the American Association of Retired Persons and the National Retired Teachers Association in Oregon, and who requested that HB 2865 be drafted—clarified how section 10 came to be in the bill:

"Now there was some discussion, as I remember it, this section 10. \*\*\* One of the reasons that we went to this law, it was considered to be—child abuse—a satisfactory thing maybe to tie into because we had something that was operating. That's all I have."

Tape Recording, Senate Committee on Human Resources/ Aging, HB 2865, May 7, 1981, Tape 2, Side A (statement of

---

[1] In particular, *former* ORS 418.775(1) (1971) provided:

"In the case of abuse of a child, as defined in ORS 418.740, neither the physician-patient privilege nor the husband-wife privilege shall be a ground for excluding evidence regarding a child's abuse, as defined in ORS 418.740, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to 418.750."

William Perrin). Section 10 was therefore in the first draft of the elder abuse reporting bill simply because that bill was modeled after the child abuse reporting bill.

     The Senate went on to discuss section 10 in greater detail, observing that HB 2865's intent was to require observers to report, that that intent was met by other sections of the bill, and that section 10 was too problematic to leave in the bill:

> "[Burns:]   Mr. Chairman and members of the committee, my name's Keith Burns. I represent the Oregon State Bar, and this problem raised under section 10 was brought to my attention this morning. I—Representative Cohen and Kathleen Beaufait and I have discussed this and, without going into a great deal of detail, it was our mutual conclusion that probably the best thing to do is to delete the section. And if that's the consensus of the committee, I'll not take more of your time. I could go into an explanation of it—
>
> "[Sen Day:]   There's some major constitutional problems with it.
>
> "[Burns:]   It is, and the legislature has been very protective of this and if you read ORS 44.040 setting forth the reasons why they're there, and really what you're talking about is trying to get people who—who would ordinarily be most likely to observe abuse to report. And that's taken care of in the early part of it. And this part merely gets into the places where you would ordinarily encourage people to divulge things."

Tape Recording, Senate Committee on Human Resources/ Aging, HB 2865, May 7, 1981, Tape 1, Side B (statements of Keith Burns and Sen L. B. Day). The legislators then discussed directly how far it should go in abrogating otherwise applicable evidentiary privileges:

> "[Sen Day:]   I would delete section 10. That would be my feeling and I believe there are a number—a variety of reasons why, through this hearing, why that should be done.
>
> "[Chairman McCoy:]   Yeah, okay. We'll take that into consideration.

"[Nancie Fadeley:]   Mr. Chairman, I have some questions for amendment drafting purposes. The privileged relationship comes in twice in this bill. Once in section 10 where you're talking about whether it should be excluded from evidence, and section 1 under the duty to report. \*\*\* What I want to know is, do you want to make it clear that this duty to report is also subject to the privileged relationship? \*\*\*

"\*\*\*\*\*

"[Sen Roberts:]   I'll express my opinion, and that is that I do not think that the—that the privilege should be extended as far as reporting is concerned. \*\*\* If some person who is helpless is being beaten up, I think it ought to be at least reported. Now whether or not we go as far as section—whether or not we would go as far as in section 10 to require some of these individuals to actually testify with reference to some—one of these confidential communications—I think that's a little bit farther. I think that the fact of reporting, however, so that it can be investigated is a—that the privilege should not be extended that far.

"[Sen Day:]   Mr. Chairman, that's what I was trying to say. I think that the direction is, leave the first section alone, take out section 10, and remove the word 'criminal' on line three, and I think that you would have a better bill."

Tape Recording, Senate Committee on Human Resources/ Aging, HB 2865, May 7, 1981, Tape 1, Side B (statements of Sen Roberts, Nancie Fadeley, and Sen L. B. Day).

As evidenced by that discussion, legislators contemplated that, by removing the section that would have abrogated privilege for the purpose of admitting evidence in a judicial proceeding, HB 2865 would be left with only the requirement that an initial report be made to prompt an investigation. Consistent with that discussion, the Senate voted unanimously in favor of deleting section 10 one week later. Tape Recording, Senate Committee on Human Resources/Aging, HB 2865, May 14, 1981, Tape 2, Side B. Because the elder abuse reporting statutes only abrogate privileged communications to the extent that a report be submitted, the trial court erred in denying defendant's motion to exclude her statements to Jones.

In view of that enactment history and, in particular, the removal of the provision that would have abrogated otherwise-applicable privileges so as to allow for the introduction of otherwise-privileged statements in judicial proceedings resulting from a report of elder abuse, we conclude that the legislature intended to abrogate otherwise-applicable privileges, including the privilege contained in OEC 504, only insofar as to allow for an initial report of suspected elder abuse. The legislature did not abrogate the privilege any further. The trial court erred in concluding otherwise.

## B.  *Corpus Delicti*

Defendant also assigns error to the trial court's determination, in the course of its ruling on her motion to exclude her statements to Jones under Oregon's *corpus delicti* rule, ORS 136.425, that those statements were confessions that were sufficiently corroborated to satisfy the *corpus delicti* rule. Because the issue may arise on remand,[2] we address it briefly.

As we have explained, this court reviews a trial court's *rulings*; a trial court's "various reasons for its ruling" on a motion "are not independently assignable as error." *Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 137 Or App 475, 478 n 2, 905 P2d 848 (1995), *aff'd*, 329 Or 620, 626, 998 P2d 1254 (2000). In this instance, the court's *ruling* was its denial of defendant's motion to exclude her statements under the *corpus delicti* rule, ORS 136.425(2). The court's *reason* for that ruling was its determination that defendant's statements to Jones, which the court determined were confessions, were sufficiently corroborated to satisfy ORS 136.425.

Regardless of whether the trial court was correct in its reason denying defendant's motion to exclude, it was correct to deny the motion. That is because the *corpus delicti* rule, as embodied in ORS 136.425(2), is not a basis for *excluding* evidence. By its terms, ORS 136.425(2) speaks to the *sufficiency* of the evidence needed to support a conviction:

---

[2] Below, the state argued that defendant had waived the OEC 504 privilege, but the trial court did not reach the issue of waiver after it concluded that the elder abuse statutes abrogated the privilege.

"Except as provided in ORS 136.427, a confession alone is not sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed." ORS 136.425(2); *see also State v. Wenning*, 282 Or App 21, 23, 386 P3d 1 (2016), *rev den*, 360 Or 852 (2017) (dismissing state's appeal from pretrial order determining that statements were confessions requiring corroboration under ORS 136.425(2), in part because ruling was not one that suppressed or excluded evidence so as to make it appealable under *former* ORS 138.060 (2016), *renumbered as* ORS 138.045 (2017)).

Because ORS 136.425(2) does not provide a basis for excluding evidence, the trial court was correct to deny defendant's motion. As for whether the evidence presented at trial will be sufficient to support defendant's conviction in view of ORS 136.425(2), that is an issue the resolution of which must await trial.

Reversed and remanded.