Argued and submitted April 19, 2022, affirmed February 15, petition for review allowed July 20, 2023 (371 Or 308)
See later issue Oregon Reports

Weston TWIGG,
an individual, and
Carrie Twigg, an individual,
*Plaintiffs-Appellants,*

*v.*

ADMIRAL INSURANCE COMPANY,
a Delaware company,
*Defendant-Respondent.*

ADMIRAL INSURANCE COMPANY,
*Third-Party Plaintiff,*

*v.*

RAINIER PACIFIC DEVELOPMENT LLC,
an Oregon limited liability company,
*Third-Party Defendant.*

Multnomah County Circuit Court
19CV36547; A175084

525 P3d 478

This appeal concerns whether an insurance company, defendant Admiral Insurance Company (Admiral), had a duty to indemnify its insured, Rainier Pacific Development LLC (Rainier Pacific), and pay a portion of an arbitration award that plaintiffs Weston and Carrie Twigg (the Twiggs) had obtained against Rainier Pacific on a breach of contract claim. After the Twiggs obtained the arbitration award, they sued Admiral in court for breaching its insurance policy with Rainier Pacific and failing to pay a portion of Rainier Pacific's liability to the Twiggs. That policy provided coverage for "property damage" caused by an "occurrence" or "accident." Following cross-motions for summary judgment by Admiral and the Twiggs, the trial court concluded that the applicable insurance policy did not provide coverage for Rainier Pacific's liability to the Twiggs and granted Admiral's motion and denied the Twiggs' cross-motion. The Twiggs now appeal. *Held*: The Court of Appeals concluded that the trial court did not err in granting Admiral's motion and denying the Twiggs' motion. An insurer's duty to indemnify for an insured's liability in a prior legal proceeding is based on the nature of the insured's liability in the underlying legal action. Here, the Twiggs' arbitration claim was a claim for breach of contract, and they never contended that Rainier Pacific's liability arose from a breach of a separate duty of care. Thus, the liability here arose solely from breach of a contractual duty, which is not liability arising from an accident.

Affirmed.

Stephen K. Bushong, Judge.

Emily Sarah Miller argued the cause and filed the briefs for appellants. Also on the briefs was Miller Insurance Law LLC.

Jacqueline Tokiko Mitchson argued the cause for respondent. On the brief were R. Daniel Lindahl, John A. Bennett, Richard L. Williams, and Bullivant Houser Bailey PC.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

## SHORR, P. J.

This appeal concerns whether an insurance company, defendant Admiral Insurance Company (Admiral), had a duty to indemnify its insured, Rainier Pacific Development LLC (Rainier Pacific), and pay a portion of an arbitration award that plaintiffs Weston and Carrie Twigg (the Twiggs) had obtained against Rainier Pacific on a breach of contract claim. After the Twiggs obtained the arbitration award, they sued Admiral in court for breaching its insurance policy with Rainier Pacific and failing to pay a portion of Rainier Pacific's liability to the Twiggs under the arbitration award. Following cross-motions for summary judgment by Admiral and the Twiggs, the trial court concluded that the applicable insurance policy did not provide coverage for Rainier Pacific's liability to the Twiggs. The court concluded that Admiral's insurance policy with Rainier Pacific applied to property damage caused by an "occurrence," meaning an "accident" caused by Rainier Pacific, but that Rainier Pacific's liability to the Twiggs in the arbitration proceeding arose instead from its breach of an agreement with the Twiggs. The court, therefore, granted Admiral's motion for summary judgment and dismissed the Twiggs' claim against Admiral for breaching the insurance policy and failing to provide coverage.

The Twiggs now appeal from the general judgment of dismissal that dismissed their claim against Admiral for breach of an insurance policy agreement. The Twiggs assign error to the grant of Admiral's motion for summary judgment and the denial of their cross motion for summary judgment.[1] For the reasons explained below, we conclude that the trial court did not err in granting Admiral's motion and denying the Twiggs' motion. We therefore affirm the trial court's judgment dismissing the Twiggs' breach of contract claim.

---

[1] There is a general rule that may limit our review of an order denying a motion for summary judgment. We do not repeat that rule or its exceptions here. We merely note that, as is the case here, "[i]n an appeal from a judgment that results from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review." *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Factual Background from the Summary Judgment Record*

"On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019). "A material fact is one that, under applicable law, might affect the outcome of a case." *Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). We state the facts consistently with that standard.

The summary judgment record in support of both Admiral's and the Twiggs' motions primarily consisted of two items: (1) key portions of the record from the arbitration dispute between the Twiggs and their construction contractor Rainier Pacific and (2) the applicable insurance policy between Admiral and its insured Rainier Pacific. We begin with the relevant arbitration proceeding.

1.   *The arbitration proceeding*

We summarize the key allegations and facts from the arbitration proceeding between the Twiggs and Rainier Pacific. The genesis of the dispute occurred in February 2011 when the Twiggs hired Rainier Pacific to construct a new home on a buildable lot that they had purchased. The construction process was not completed within the agreed-upon time. Both during the construction process and after they moved into their home, the Twiggs alerted Rainier Pacific to a number of construction problems and deviations from the construction plans. Among the many issues they raised, the Twiggs complained that the garage floor was sloped and cracked. The Twiggs spent considerable time negotiating with Rainier Pacific to complete or redo several aspects of the construction. Ultimately unsatisfied due to the lack of progress, the Twiggs hired an attorney to pursue a claim against Rainier Pacific.

The Twiggs first filed an arbitration claim against Rainier Pacific in June 2015 (the first arbitration). That first

arbitration predated the arbitration proceeding that underlies the insurance coverage claim at issue here. In the first arbitration, the Twiggs alleged that Rainier Pacific had not constructed the home in accordance with the approved plans and specifications. Among other things, the Twiggs alleged that there was "[i]improper reverse sloping of the garage floor over [the] living space, which has resulted in standing water and leaks to the interior of the home." The first arbitration claim did not proceed to a hearing but rather was settled in September 2017 by an agreement between the Twiggs and Rainier Pacific known as the "Repair Agreement." That agreement is central to this insurance coverage dispute.

The Repair Agreement required Rainier Pacific to make a number of repairs, including correcting the slope and drainage issues of the garage floor. The Repair Agreement required that repairs be completed by mid-December 2017. It also provided for a number of stipulated remedies in the event of noncompliance with the agreement. The agreement provided that disputes would be arbitrated before a designated arbitrator.

In May 2018, the Twiggs, having concluded that the repair work was still not completed, filed the arbitration claim against Rainier Pacific that underlies the insurance coverage dispute before us. The arbitration claim, as is typical of the more informal arbitration process, does not set forth numbered allegations or labelled claims. The claim is set out in a letter to the arbitrator, which, as a whole, alleges that Rainier Pacific failed to perform its obligations under the Repair Agreement with respect to a number of items in the home, including the garage floor. The letter commences with the contention that the dispute "follows breach of a repair-based Settlement Agreement," which agreement was attached as the first exhibit. Among other allegations, the Twiggs alleged that, although Rainier Pacific had attempted to correct the slope in the garage by installing a "concrete overlay," the slope had not been corrected. They further alleged that, "[m]oreover, [Rainier Pacific] failed to carry the slab's control joints up through the lightweight concrete pour, which is required by the manufacturer[,] [ARDEX]." They contended that, as a result, the sloped garage floor still created water issues for the house. The Twiggs sought

remedies under the Repair Agreement, including the cost for another contractor to complete the repairs, liquidated damages, and attorney fees. Rainier Pacific understood the claim to be based on breach of the settlement agreement; in its answer, it noted that it was answering the Twiggs' allegations regarding Rainier Pacific's breach of the Repair Agreement.

In the arbitration, the Twiggs presented an expert report that criticized Rainier Pacific's installation of the ARDEX concrete flooring product that had been intended to level the garage floor. The expert report noted that, contrary to the manufacturer's specification that required all construction joints to be carried through the floor, "[n]one of the construction joints have been carried through." The Twiggs submitted an exhibit with photos of cracking and other issues in the garage floor. They also raised issues as to several other defects in their home that Rainier Pacific had failed to repair.

In October 2018, the arbitrator issued a decision. The arbitrator first noted that the Twiggs "asserted a claim for breach of a settlement agreement." The arbitrator identified the Repair Agreement as "the operative contract for this matter" and noted that the agreement had resolved the Twiggs' claims for defective construction that had been alleged in the first arbitration. The arbitrator concluded that, with the exception of the garage floor, Rainier Pacific had "almost entirely failed to perform or complete any of" the items in the Repair Agreement.

As to the garage floor, the arbitrator concluded that the floor repairs had been completed, but that the installation was "defective" and contrary to the manufacturer's specifications. The arbitrator later noted that there was evidence that the cost to repair the garage floor was $150,000, which "figure may serve as a starting point for the determination of damages." The arbitrator concluded that Rainier Pacific, "through its consistent failure to diligently prosecute the work, and through its defective efforts to repair the garage slab, materially and substantially breached the [Repair] Agreement." The arbitrator then awarded $604,594.80, which was based on evidence of an estimate for the total cost

of repairs for all of the items that Rainier Pacific had not repaired, including the garage floor. The arbitrator finally concluded that the Twiggs' "relief is based upon common-law principles of breach of contract." In January 2019, the trial court entered a judgment on the arbitration award against Rainer Pacific for $604,594.80.

2.  *The relevant insurance policy*

The Twiggs contend that Rainier Pacific tendered the arbitration claim to that company's insurer, Admiral, but that Admiral denied coverage. The Twiggs initially alleged that Admiral was responsible for providing coverage for a "large portion" of the $604,594.80 in damages that Rainier Pacific had caused to the Twiggs' property through negligent repair work. When they moved for summary judgment, however, the Twiggs contended that Admiral was contractually obligated to cover $150,000, an amount they maintained represented "accidental property damage to the new garage floor." In its answer, Admiral admitted that it had received a tender of the claim from Rainier Pacific but denied that it was obligated to cover the claim.

We turn to the relevant insurance policy that Admiral issued to Rainier Pacific. The applicable "commercial general liability coverage" policy was effective as of August 9, 2017. The relevant "Coverage A" section of the policy covering bodily injury and property damage liability provides that it covers "'property damage' only if: (1) [t]he *** 'property damage' is caused by an 'occurrence'." Property damage is defined to include "[p]hysical injury to tangible property." Central to this dispute, an occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Twiggs note that there is a separate "Coverage B" section for "personal and advertising liability" coverage that generally excludes liability "arising out of a breach of contract." That type of breach-of-contract exclusion does not appear in the relevant Coverage A section. The Twiggs further observe that the policy includes an endorsement excluding residential construction activities, but that exclusion "does not apply to repair or remodeling of single-family

dwellings which were or are certified for occupancy prior to commencement of such repair or remodeling work performed by you or on your behalf."

Two other exclusions are relevant to this appeal. First, the policy contains an endorsement excluding pre-existing damages, which include "[a]ny damages arising out of or related to *** 'property damage' *** which first occurred prior to the inception date of this policy" and "[a]ny damages arising out of or related to *** 'property damage' *** which are in the process of settlement, adjudgment or 'suit' as of the inception date of this policy." Additionally, Coverage A lists two exclusions at sections "j(5)" and "j(6)" that provide that the insurance does not apply to

"j.   Damage To Property

"'Property damage' to:

"*****

"(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

"(6)   That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."[2]

## B.   *The Parties' Cross-Motions for Summary Judgment and the Trial Court's Ruling*

As noted, the Twiggs contended in the trial court that Admiral had a duty under the applicable insurance policy to provide coverage for the damage to their garage floor caused by Rainier Pacific's negligent repair work. The Twiggs alleged a breach of contract claim, contending that Admiral had breached its duties under the applicable insurance policy to provide coverage for its insured. Admiral

---

[2] There are further definitions and limitations in the policy that are relevant to the j(5) and j(6) exclusions. However, because neither the trial court nor we ultimately reach any issues involving those exclusions, we do not set them forth here. Like the trial court, we also do not reach whether Rainier Pacific's liability is excluded from coverage under the insurance policy's j(5), j(6), or preexisting damage exclusions, because we conclude that there is not coverage in the first instance.

moved for summary judgment against that claim and raised two issues. First, it contended that the policy provided coverage only for property damage caused by an "occurrence," defined as an accident, and that Rainier Pacific's liability in the arbitration arose solely from a breach of the repair agreement. Second, it contended that the arbitration award resulted from the original construction work done by Rainier Pacific in 2013, which was outside the relevant policy periods and excluded under the policy's preexisting damage exclusion.

The Twiggs cross-moved for summary judgment in their favor on their breach of contract claim. They argued that Rainier Pacific's liability arose from its negligent repair work on their home's garage floor, including failing to carry through the existing joints when pouring the new ARDEX flooring product. They contended that the defective construction work qualified as an "occurrence" or accident under the relevant insurance policy. They further argued that the liability arose from the repair work that occurred during the policy period and not from the original construction work. As a result, they argued that the damage was covered by the policy and that the pre-existing damage exclusion did not apply.

The trial court granted Admiral's summary judgment motion and denied the Twiggs' cross-motion for summary judgment. The court concluded that Rainier Pacific's liability in the arbitration arose from its breach of contractual duties and not from a covered "occurrence" or accident. Thus, the court concluded that the damage was not covered under the policy.

The trial court largely relied on *Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 329 Or 620, 998 P2d 1254 (2000), which we discuss below. The court provided its reasoning:

"[H]aving carefully studied the *Oak Crest* case, in light of the arbitration award in this case finding that Rainier Pacific *** had breached its contract, the repair contract, which was a settlement agreement of the original construction defect claim; and that that contractual breach was based on its *** faulty workmanship in installing the repair that it had agreed to install, in my view is

indistinguishable in any material way from the shoddy workmanship at issue in the *Oak Crest* case.

"And I do not see that there is a general breach of a duty of due care that would distinguish this case from *Oak Crest*. And so I'm required to follow the Oregon Supreme Court's ruling.

"I'm bound by that ruling until the [Supreme Court] decide[s] that that ruling maybe is not quite as nuanced as they had intended as a matter of insurance coverage law. But they haven't said that yet. Maybe they'll get an opportunity to say that it in this case."

Having concluded that there was no coverage in the first instance, the trial court did not reach alternative arguments Admiral raised under the policy's j(5), j(6), and pre-existing damage exclusions. After issuing its ruling on the summary judgment motions, the court entered a judgment of dismissal.

## II.   LEGAL ANALYSIS

We begin our analysis with the applicable legal standard. When parties cross-move for summary judgment, each party "has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law." *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). "There is no genuine issue of material fact if, 'based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.'" *Smith v. Central Point Pawn, LLC*, 296 Or App 341, 342, 438 P3d 436 (2019) (quoting ORCP 47 C).

As the parties have framed the coverage issue in their briefing, this appeal does not involve an issue of disputed fact but concerns a legal issue: namely, whether the applicable Admiral insurance policy provides coverage for the legal liability incurred by Rainier Pacific in the underlying arbitration proceeding. We agree that, at least here, that is a legal issue. *See FountainCourt Homeowners v. FountainCourt Develop.*, 360 Or 341, 357-58, 380 P3d 916

(2016) (stating that whether an insurer is obligated under a policy to cover its insured's liability arising from litigation generally presents "questions of law" that are determined "by reference to (a) the contract [or the policy] and (b) the judgment and record in the underlying proceeding," although there may be fact issues relating to coverage exclusions developed in the subsequent coverage litigation). The insured—or here, the Twiggs, standing in for the insured Rainier Pacific—bears the burden to prove coverage, and the insurer, Admiral, bears the burden to prove exclusions from coverage. *Id.* at 360. Under this policy, a covered "occurrence" is a prerequisite to coverage and, therefore, the Twiggs bore the burden in the trial court to prove a covered occurrence. *See id.* (noting "no ambiguity" that proving an occurrence under the relevant policy "relate[d] to coverage").

When interpreting insurance policies, Oregon courts "determine the intention of the parties based on the terms and conditions of the insurance policy." *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). We interpret the policy "from the perspective of an ordinary purchaser of insurance." *Bighorn Logging Corp. v. Truck Ins. Exchange*, 295 Or App 819, 828, 437 P3d 287, *rev den*, 365 Or 195 (2019) (internal quotation marks omitted). For defined terms in the policy, we look to the policy's definitions. *Id.* at 829. Undefined terms are interpreted according to their plain meaning. *Id.* If there is more than one plausible interpretation of an undefined term, "we examine the word or phrase in the context in which it is used in the policy and the broader context of the policy as a whole." *Id.* If ambiguity or reasonable doubt remains regarding the meaning of a policy word or phrase in the context of the entire policy, that doubt is resolved against the drafter, the insurance company, and in favor of the insured. *Id.*

The Twiggs contend that Admiral's insurance policy's definition of "occurrence," which is defined as "an accident," can reasonably be understood by an insured to cover damage caused by "mistakes" in work performed pursuant to a repair contract. They contend that that holds true

"irrespective of whether the liability is stated in terms of contract damages, negligence damages, both, or another form of damages."

As explained below, we disagree with that contention, in the context of this case, because the issue of coverage necessarily depends on the nature of the insured's liability in the prior litigation, or here, arbitration. As noted above, the policy provides that it covers "'property damage' only if" the "'property damage' is caused by an 'occurrence.'" Property damage is defined to include "physical injury to tangible property," and an occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

There is no doubt that a repair contractor's negligent work that accidentally caused damage to physical property *could* give rise to an occurrence under the policy, namely "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.*, *FountainCourt Homeowners*, 360 Or at 348, 361-65 (concluding that a jury's finding that an insured subcontractor negligently damaged physical property gave rise to coverage under a policy that required proof of an "occurrence," which was also defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"); *cf. Kisle v. St. Paul Fire & Marine Ins.*, 262 Or 1, 6, 495 P2d 1198 (1972) (concluding that the term "accident" "has a tortious connotation" such that "[d]amage *solely* caused by failure to perform a contract is not recoverable in tort" (emphasis added)). But an insurer's duty to indemnify for an insured's liability in a prior legal proceeding is based on the nature of the insured's liability in the underlying legal action. "In order for the duty to indemnify to arise, the insured must be liable for harm or injury that is covered by the policy." *Ledford v. Gutoski*, 319 Or 397, 405, 877 P2d 80 (1994). "[T]he facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Id.* at 403. The duty to indemnify is independent of the duty to defend, which may arise merely if the underlying complaint could "impose liability for conduct covered by the policy" or the "complaint provides *any basis* for which the insurer provides coverage." *Id.* at

400 (emphasis in original). The duty to indemnify following a legal determination of the insured's liability is different.

As the Supreme Court has explained:

"What the insured is legally obligated to pay as damages can be determined only by reference to the underlying action, which determined the insured's legal obligation to pay damages. Thus, in the subsequent proceeding, [a party] is not *** entitled to second-guess or retry 'the *nature* of [the insured's] liability.'"

*FountainCourt Homeowners*, 360 Or at 357 (emphasis in original).

The court continued:

"[T]he subsequent proceeding requires the court to evaluate—as a matter of contract law—what, precisely, the insured has become legally obligated to pay as damages in the prior proceeding, in order to determine whether the policy covers those damages. In other words, [a party] cannot, in a subsequent proceeding, retry [the] insured's liability, or alter the nature of the damages awarded in that proceeding."

*Id*. With that in mind, we turn to the nature of the insured Rainier Pacific's liability and damages that arose in the prior legal proceeding.

As we noted at the outset, the Twiggs' arbitration claim was presented as a claim for breach of contract. It was defended by Rainier Pacific as a breach of contract claim. And, significantly, the arbitrator understood it to be a breach of contract claim. It concluded that Rainier Pacific, "through its consistent failure to diligently prosecute the work, and through its defective efforts to repair the garage slab, materially and substantially breached the [Repair] Agreement." It is true that the Twiggs presented issues regarding Rainier Pacific's negligence in its original construction work as context for the claim, and further presented allegations regarding Rainier Pacific's subsequent defective repair work done pursuant to the Repair Agreement. However, those allegations sought to prove the sole breach-of-contract claim, and the arbitrator ultimately agreed that Rainier Pacific breached its contractual duties under the Repair

Agreement. Indeed, the Twiggs acknowledge in their briefing before us that they "had pled a single contract claim for the purpose of invoking the Repair Contract's 'Stipulated Remedies' provision."

Liability for damages arising from breach of a contract is not covered under the insurance policy. As discussed, the insurance policy covers property damage caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The liability here arises solely from breach of a contractual duty, which is not liability arising from an accident. Of course, liability could arise from both breach of a contractual duty and breach of an independent duty of care not to tortiously damage property. But, as the trial court concluded, the Supreme Court's decision in *Oak Crest Const. Co.* guides the resolution of that problem. In that case, the plaintiff was a contractor who had agreed to provide a custom home, including cabinets and other woodwork, to homeowners. 329 Or at 622-23. The plaintiff had hired a subcontractor to paint the cabinets and woodwork, but the paint had not cured properly. *Id.* at 624. As a result, the plaintiff spent $10,000 stripping and refinishing the cabinets and woodwork. *Id.* The plaintiff sued its insurer, which had provided the plaintiff with a commercial liability policy, seeking to require the insurer to cover the $10,000 expense under the policy. *Id.* at 622-23. That policy, like the one at issue here, provided that the insurer would cover property damage caused by an occurrence, which was nearly identically defined as "an accident and includes repeated exposure to similar conditions." *Id.* at 622. The Supreme Court held that the plaintiff's damages were not covered under the policy, because they arose from the plaintiff's contractual duty to the homeowners, and there was no evidence in the record to support that they were caused by an "accident" or the subcontractor's breach of a duty of care. *Id.* at 624, 628-29. "This court has indicated that there can be no 'accident,' within the meaning of a commercial liability policy, when the resulting damage is merely a breach of contract." *Id.* at 626. Considering the indistinguishable circumstances presented in this case, we agree with the trial court that Admiral was entitled to summary judgment as a

matter of law because Rainier Pacific's liability in the arbitration was based solely on the breach of a contractual duty and not the result of an accident.

   *Oak Crest Const. Co.* clearly acknowledges that liability in some cases involving a contract may arise under *both* contract and tort theories, which could give rise to coverage under a policy covering property damage arising from an accident. *Id.* at 627-28. For instance, there may be coverage where the insured's liability arose from an independent breach of the duty of care. *Id.* at 629; *see also Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 40, 249 P3d 534 (2011) (concluding that a party to a contract may bring a claim in negligence for property damage if the claim is cognizable in the absence of a contract and the contract's terms do not supplant the common law duty of care or otherwise limit the right to such a claim). Here, however, although the Twiggs' arbitration claim raised issues regarding Rainier Pacific's defective construction in making repairs under the Repair Agreement, they never contended that Rainier Pacific's *liability* arose from a breach of a separate duty of care. Rather, the arbitration claim alleged that Rainier Pacific's liability arose solely from breach of its contractual duties.

   Finally, the Twiggs contend that reliance on *Oak Crest Const. Co.* is misplaced here because the interpretation of this insurance policy depends on its particular text and the common understanding of its terms to an ordinary purchaser of insurance. *See Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 101, 585 P2d 657 (1978) (stating that, in interpreting insurance policies, the court is "guided by the principle that it is the common understanding of the term which must be used and not its technical meanings"). But our opinion is based on consideration of the policy's defined and undefined terms, namely, that liability resulting from a contract claim is not property damage caused by an "occurrence," defined in the policy as an "accident." We have reviewed the policy, and nothing in the text of the relevant coverage provisions or those provisions in the context of the entire policy could reasonably be understood to provide for coverage of Rainier Pacific's liability that arose solely from its breach of its contractual duties under the Repair Agreement. As a result,

the trial court did not err in granting Admiral's motion for summary judgment and denying the Twiggs' cross-motion for summary judgment after concluding that the insurance policy did not cover Rainier Pacific's liability for contract damages resulting from the arbitration claim.

  Affirmed.